UNITED STATES v. HEIKE et al.

(Circuit Court, S. D. New York. February 14, 1910.)

1. CRIMINAL LAW (§ 330*)—PLEA IN BAR—BURDEN OF PROOF.

Where defendant's attorneys in his presence claimed the opening and the affirmative of the issue on a special plea in bar, to which the government's attorney assented, the ordinary legal presumption of innocence did not apply as to such plea, on which the government joined issue, but the burden was on defendant to establish the facts pleaded by a fair balance of the evidence.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 721; Dec. Dig. § 330.*]

**2.** CRIMINAL LAW (§ 561\*)—PLEADING—CONFESSION AND AVOIDANCE—REA-
SONABLE DOUBT.

A plea of confession and avoidance removes the requirement of proof
beyond a reasonable doubt, which is applicable only to criminal cases
wherein accused pleads not guilty.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1267;
Dec. Dig. § 561.\*]

**3.** CRIMINAL LAW (§ 42\*)—IMMUNITY FROM PROSECUTION—PRIOR EVIDENCE
BEFORE GRAND JURY.

Whether accused is entitled to immunity from prosecution because of
prior evidence given by him before a grand jury depends, not on whether
it is barely possible that some fact to which he testified before the grand
jury would be used against him, but whether his former testimony or the
documents which he produced would probably become a link in the chain
of evidence to establish his guilt of the offense charged.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 45–48;
Dec. Dig. § 42.\*]

**4.** CRIMINAL LAW (§ 42\*)—IMMUNITY—PRIOR TESTIMONY.

That accused in a prior investigation before the grand jury of the prob-
able violation of the Sherman anti-trust act (Act July 2, 1890, c. 647. 26
Stat. 209 [U. S. Comp. St. 1901, p. 3200]) by the American Sugar Refin-
ing Company testified that he was secretary thereof was insufficient to
afford him immunity from prosecution individually for customs' frauds
and conspiracy to defraud the government in connection with the busi-
ness of such corporation.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 45–48;
Dec. Dig. § 42.\*]

**5.** CRIMINAL LAW (§ 42\*)—TESTIMONY BEFORE GRAND JURY—IMMUNITY—NA-
TURE OF CLAIM.

A prior proceeding before a federal grand jury involved an investiga-
tion of whether the American Sugar Refining Company had violated the
Sherman anti-trust act; no claim being there made that the government
had been defrauded of its customs' duties by such company. Accused,
who was the corporation's secretary, was subpoenaed to produce the cor-
poration's books showing the amount of sugar melted at its different re-
fineries as bearing on the extent of the corporation's business, and it ap-
peared that neither accused nor the attorney for the government at the
time he testified conceived that defendant was guilty of customs' frauds,
nor was he asked any questions conveying such inference. He produced,
however, certain schedules made from the company's books showing the
quantity of sugar actually melted at the company's works, but did not
swear that they were correct, and it further appeared that defendant
when he gave such testimony knew that the corporation's president had
invited a full and free examination of the corporation's books by the
government's officers. *Held*, that defendant's testimony before the grand
jury and the production of such documentary evidence did not entitle
him to immunity from subsequent prosecution for customs' frauds; it not
appearing that at any time while defendant was being examined before
the grand jury he urged his privilege not to testify on the ground that he
might incriminate himself.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 45–48;
Dec. Dig. § 42.\*]

**6.** WITNESSES (§ 297\*)—PRIVILEGE.

To entitle a witness to the privilege of silence, the court must say from
the circumstances of the case and the nature of the evidence which the
witness is called on to give that there is reasonable ground to apprehend
danger to the witness from his being compelled to answer, but, this being
made to appear, great latitude should be allowed him.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1026–1037;
Dec. Dig. § 297.\*]

7. Criminal Law (§ 42\*)—Government Witness—Immunity from Prosecu-
tion—Good Faith of Prosecuting Officers.

   In determining a question of alleged immunity from prosecution, by
reason of previous testimony given by accused before a grand jury, it is
important to consider the good or bad faith on the part of the prosecut-
ing officers.

   [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 45–48;
Dec. Dig. § 42.\*]

Charles R. Heike and others were indicted for frauds on the cus-
toms and other offenses against the United States, and moved for a
directed verdict on a special plea in bar of immunity because of prior
evidence given before the grand jury. Motions denied. Verdict or-
dered.

The following is the substance of the plea in bar and of the government's
replication thereto:

(1) That on June 17 and 21, 1909, there was a proceeding pending before
the grand inquest of the United States for the Southern District of New
York, brought under the Sherman anti-trust act.

(2) That on June 16, 1909, defendant was subpœnaed to appear before such
inquest and testify concerning an alleged violation of such act by the Ameri-
can Sugar Refining Company and others, and to bring with him all records,
etc., showing the minutes of the meetings of the executive committee of the
board of directors of such company.

(3) That on June 18th defendant was commanded by subpœna to appear be-
fore such inquest to testify concerning an alleged violation of the Sherman
anti-trust act by the American Sugar Refining Company on behalf of the
United States, and to produce copies of all letters from the refining company,
H. O. Havemeyer, and the defendant to one Kissel during the years 1903 and
1909, inclusive, and by defendant to the firm of Parsons, Clossom & McIll-
vaine and John E. Parsons, concerning a loan made by Kissel to one Segal on
December 30, 1903, and all deeds, evidences, and writings which defendant
had in its custody concerning such premises.

(4) That defendant appeared before such inquest June 17 and 21, 1909, was
duly sworn, examined, and gave testimony under oath, and produced and tes-
tified concerning documentary evidence, to wit, the letters, records, agree-
ments, and memoranda called for by the subpœna, including checks of the
American Sugar Refining Company of New York, signed by defendant as
treasurer of the company.

(5) That under oath defendant testified that he was secretary and treas-
urer of the American Sugar Refining Company; was in charge of the rec-
ords, books, and minutes of the company; that he testified concerning the in-
corporation, organization, and management of the company; its sugar im-
porting business in the collection district of New York; its properties, re-
fineries, etc.; and that all of such testimony related to the period included
in the various dates mentioned in this indictment.

(6) That in that proceeding defendant testified and under oath produced
evidence concerning the transactions, matters, and things set forth in the in-
dictment herein, and for and on account of which this proceeding and prose-
cution is brought.

(7) That on December 1, 1909, there was a proceeding before the grand in-
quest in such district pursuant to the Sherman anti-trust act.

(8) That on November 29, 1909, defendant was subpœnaed to appear before
such grand inquest and testify concerning alleged violations of the statutes
of the United States by the American Sugar Refining Company of New York
and to bring the books and records of such company.

(9) That in obedience to such subpœna defendant appeared and produced
the documentary evidence required, and was examined and testified concern-
ing the incorporation and organization of the American Sugar Refining Com-
pany; its properties and business conducted within the collection district of

---

New York and defendant's position with the company; the actual production of refined sugar by each of the refineries owned by the company; the expense accounts, expense books, salary lists, etc.; raw sugar meltings of all refineries owned by the company from 1893 to 1907, inclusive; letters and tests relating to tests on importations; monthly and annual refinery expenses—expenses, etc., from 1904 to 1908, inclusive; statements of figures entering into the profit and loss accounts of the company; and certain resolutions authorizing expenditures on the company's behalf, and private letter books of the defendant relating to the period included within the dates mentioned in the indictment.

(10) That in such proceeding before the grand inquest, defendant testified orally under oath, and produced documents concerning transactions set forth in the indictment herein against defendant.

(11) That on January 5, 1910, there was a proceeding pending before the grand inquest for the Southern district of New York, brought under the Sherman anti-trust act, and that on that date defendant was requested by an Assistant United States District Attorney for the Southern district of New York to appear and attend forthwith before such inquest and testify concerning an alleged violation of such act; that defendant in obedience to such request appeared and was sworn and examined on oath concerning the output of the American Sugar Refining Company; its ownership of all sugar beet companies; the capacity and production of its refineries, and the contents of certain letters relating to the affairs and management of the companies—all of which testimony related to the period including the various dates mentioned in the indictment.

(12) That in such proceeding before the grand inquest defendant testified orally and under oath produced documentary evidence concerning the transactions, matters, and things set forth in the indictment herein, and for and on account of which this proceeding and prosecution was brought against defendant.

(13) That defendant is ready to verify and prove the foregoing facts as the court shall direct and award, and therefore pleads the same in bar of any prosecution, trial, or punishment under such indictment, and says that to prosecute or punish him under said indictment, or for any alleged offense charged therein, or in any of the acts thereof, would be to deny the protection and immunity of the statutes of the United States in such case made and provided.

Wherefore, defendant prays that he may be discharged from further prosecution or punishment under said indictment.

To this plea was attached copies of the various subpœnæs served on defendant.

To this plea the government filed the following replication:

Denying that defendant orally or under oath produced documentary evidence concerning matters and things set forth in the indictment as in the plea alleged, and denying that defendant obtained immunity from prosecution by reason of his testimony before the grand inquest, and alleged:

(1) That the prosecution herein exclusively relates to customs' frauds, and that defendant had never been called before the grand jury which returned this indictment against him, nor before any grand jury considering any violations of the customs law, nor had he testified or produced documents before any such grand jury on that subject.

(2) That the proceedings in which defendant testified and produced documents were independent from that in which he was indicted, and were both proceedings arising under the Sherman anti-trust law. That none of the testimony given by defendant or the documentary evidence disclosed any facts which would form any part of an agreement punishable under the customs' laws.

(3) That defendant appeared in proceedings in no possible way connected with the proceedings herein, but that so independent were these proceedings that none of the law officers engaged in the present prosecution knew of the appearance of defendant before any of the grand juries until after the fact of such appearance was chronicled in the public press, and the evidence which defendant gave and the documents which he produced in such proceedings

were entirely unknown to any of the law officers engaged in this prosecution until the plea herein was filed; that the transactions, matters, and things as to which defendant testified orally, and as to which he produced documentary evidence in the proceedings referred to in the plea, were not in fact known to any of the officers prosecuting in behalf of the United States in this case until after the plea filed herein, nor was any of the testimony which he gave, or the documentary evidence which he produced, made use of in any proceeding against him, or otherwise.

(4) In fact, as to none of the transactions, matters, and things set forth in the indictment herein, and for and on behalf of which this proceeding is brought·against the defendant, did he testify or produce documents in the proceedings referred to in the plea, nor could the testimony which he gave, or the documents which he produced in such proceedings, form any part of the transactions, matters, or things which are the subject of this indictment.

(5) That heretofore in a proceeding which was begun in 1909 defendant was called as a witness in a proceeding brought by the United States against the American Sugar Refining Company of New York, involving the very frauds herein in question, and testified at length as to the transactions, matters, and things which are the subject of this indictment, and this without any claim that any such testimony would in any wise incriminate him, and without any claim of privilege with respect thereto.

The indictment charged four substantive offenses under section 5445, Rev. St. (U. S. Comp. St. 1901. p. 3678), and section 9 of the Customs Administrative act (Act June 10, 1890, c. 407, 26 Stat. 135 [U. S. Comp. St. 1901, p. 1895]), and conspiracy to defraud the Government and conspiracies to commit offenses under section 5440. The defendant filed a special plea in bar claiming immunity from prosecution of this indictment on the ground that he had heretofore been called before grand juries charged with investigating alleged violations of the Sherman anti-trust law (Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]), and in such proceedings had produced testimony and given evidence respecting transactions, matters, and things for which he is now being prosecuted. To this plea the government filed a replication, and upon rejoinder being entered by the defendant the issue was tried before a jury. At the end of the whole case, the defendant and the government moved for a direction of verdict.

Henry L. Stimson, Winfred T. Denison, Felix Frankfurter, Franklin H. Mills, and W. Cleveland Runyon, for the United States.

John B. Stanchfield and George S. Graham, for defendants.

MARTIN, District Judge (orally). This defendant is indicted with others for defrauding, and also for entering into a conspiracy to defraud, the government of the United States of its customs on certain sugars that have been imported by the American Sugar Refining Company. So far as this issue is concerned the defendant does not deny his guilt. He has filed a plea in bar, and by it brings upon the record a new issue whereby he asserts that there exist certain facts which, though he may be guilty of all that is charged in this indictment, he cannot be prosecuted or punished for. His attorneys in his presence claimed the opening and the affirmative of this issue, and to this the attorney for the government assented. The ordinary legal presumption of innocence has been by the defendant voluntarily withdrawn by this plea in bar. He has chosen this issue, and thereby takes the affirmative, and in so doing he must establish facts pleaded—the same having been traversed by the counsel for the government—by a fair balance of evidence, or, in other words, by this plea the burden of proof rests upon the defendant.

It is claimed by counsel for the defendant that even this issue so volunteered by this plea should be sustained unless found to the contrary beyond a reasonable doubt. If such was to be held the law, men of means who were able to secure the services of competent and adroit attorneys could block the wheels of justice by successive pleas in bar and perhaps succeed upon some mere conjecture that the defendant said or did something before the grand jury whereby he may be shielded by the statute of immunity. Evidence beyond a reasonable doubt is only applicable to criminal cases wherein the defendant pleads not guilty. A plea of confession and avoidance removes the requirement of that degree of proof. State v. Ellsworth, 131 N. C. 773, 42 S. E. 699, 92 Am. St. Rep. 790; Com. v. Daley, 4 Gray (Mass.) 209.

This case presents the question whether or not the defendant testified before the grand jury to any transaction, matter, or thing in reference to the offenses alleged against him by this indictment. Is there a balance of evidence tending to show that his testimony before the grand jury, or the documents that he produced there, will probably become a link in a chain of evidence to establish his guilt; not whether some ingenious mind may carve out of the mass of innocent facts, to which the inquiry before the grand jury related, some hidden fact whereby it is barely possible that the same would be used against him. If the court were to resort to that extreme, it would result in a dangerous practice, and thwart the ends of justice. Such is not the law governing the trial of an issue raised by a plea in bar. The true rule is: Is it probable, from the evidence adduced, that the defendant testified to some matter or thing for or on account of which he now stands charged as a criminal? United States v. Burr, 25 Fed. Cas. 1 (No. 14,692); Brown v. Walker, 161 U. S. 591, 599, 600, 16 Sup. Ct. 644, 40 L. Ed. 819; Ex parte Irvine (C. C.) 74 Fed. 956; R. v. Boyes, 1 B. & S. 331. It is claimed here that the mere statement of the accused before the grand jury that he was an officer (the secretary) of the American Sugar Refining Company is a fact that affords him immunity. Can it be that Congress intended by this immunity statute to afford a shield to a man who has committed a crime, by merely swearing to something that is already notorious, and where neither civil nor criminal justice can be in the least advanced by the disclosure? Such a construction to my mind would be a perversion of justice. See Rudolph v. State, 128 Wis. 222, 107 N. W. 466, 116 Am. St. Rep. 32. The thing mainly relied on, however, by counsel for the defendant is that he produced documentary evidence tending to show the amount of sugar melted at the Havemeyer and Elder docks, those being docks at which the fraud is alleged to have been perpetrated. This seems to have been a voluntary act on his part unless it was compulsory by virtue of the subpoena. The subject-matter of investigation by that grand jury before which the defendant was summoned was an alleged violation of the Sherman act. No claim was there made that the government was defrauded; the claim there was that the conduct of this sugar company was such that the rights of the people were affected by the restraint of trade, and the request of the defendant was that he procure from the books of the company the amount of sugar melted

in all of its different refineries, which included, of course, the Havemeyer and Elder Refinery, and it bore upon the question as to whether this sugar company as a corporation was reaching out and laying its hands upon other companies in restraint of trade; or, in other words, had it brought into its own grasp the sugar refining business of this country to the detriment of the people. The defendant testifies on this trial that no question was put to him or any request made of him whereby his guilt of the charges set forth in this indictment was even thought of by him. If he did not think of it, how can it be conceived that the attorney for the government thought of it? Besides, the defendant testified that he had no knowledge of the quantity of sugar actually melted in any of the refineries of the sugar company until his clerks made the computation requested. He does not even swear that they made a correct one. Is it fairly probable to assume from this evidence that the making of that schedule about which the defendant knew nothing—purely the result of the examination of the books of the corporation—was the furnishing of evidence, or the source of evidence, to convict him of this charge of fraud and conspiracy? The statute simply protects the defendant from furnishing evidence against himself, not others. See Brown v. Walker, 161 U. S. 591, 600, 16 Sup. Ct. 644, 40 L. Ed. 819.

Again, a witness testifying to documentary evidence found in the records of a corporation, if, perchance, an inquiry were made that may furnish evidence of his guilt, he should then assert his immunity. An officer of a corporation has testimonial powers to extract from its records a mass of facts, usually innocent, and which relate only to his administrative duties. The inquiry of the defendant before the grand jury was relevant to general facts apparent upon the books of the company and facts of which the company invited investigation. The defendant knew prior to the time of his testimony that the president of his company had written to the Secretary and Treasurer of the United States and to prosecuting attorneys inviting the fullest and freest examination of the books of the company. The defendant, as secretary of the company, had promulgated to the public through the columns of the newspapers the willingness to furnish the government with any fact that the books of the company might reveal. Under such a state of facts, if that investigation before the grand jury by the government, following the invitation of the officers of the company, revealed any material fact that might incriminate this defendant, he should have asserted it and thus warned the attorney, so that he could submit it to the court, so that the court could exercise his discretion whether to proceed further, grant the immunity, or stop short of it. See Wigmore on Evidence, § 2281a, p. 241. The immunity provided by this statute was intended to afford an investigation without its being interrupted by the constitutional privilege of silence, or, in other words, under the Constitution, as under the common law, a witness is not obliged to incriminate himself. But to avail himself of that privilege he must ordinarily assert it. United States v. Kimball (C. C.) 117 Fed. 156, 163; State v. Murphy, 128 Wis. 201, 107 N. W. 470; 5 Wigmore on Evidence, § 2281a. Whether the immunity statute flows out to a wit-

ness testifying depends on circumstances. This statute of immunity must be administered with common sense; on the one hand, some questions are of such character that the witness would understand naturally and inferentially that he would be immune if he answered, and thus proceed to answer without asserting his right, while under other circumstances it would be his duty to assert it if he intended to rely on it. The administration of this statute involves the same application of common sense that the English court refers to in the Boyes Case (1 B. & S. 331), in language approved by the Supreme Court:

"To entitle a party called as a witness to the privilege of silence, the court must see from the circumstances of the case and the nature of the evidence which the witness is called upon to give that there is reasonable ground to apprehend danger to the witness from his being compelled to answer. * * * The witness' danger being made to appear, great latitude should be allowed to him." Brown v. Walker, 161 U. S. 591, 599, 16 Sup. Ct. 644, 648, 40 L. Ed. 819.

Chief Justice Marshall in the Burr Case uses this language:

"When two principles come in conflict with each other the court must give them a reasonable construction so as to preserve them both to a reasonable extent. The principle which entitles the United States to the testimony of every citizen and the principle by which every witness is privileged not to accuse himself can neither of them be entirely disregarded." 25 Fed. Cas., at pages 39, 40.

Applying that principle to the case at bar, the defendant has failed to maintain his plea. Neither he nor the government attorney, so far as appears here, had the slightest idea that this defendant in his evidence before the grand jury revealed a single fact that could be made use of in establishing his guilt of any matter or thing to which this indictment relates. The need of vigorous investigation and punishment of offenders of the law is at least as apparent to-day as it ever was, and it is equally apparent that Congress has intended to clothe the department of justice with full power to enforce the mandates of the law, and to cover the guilty with the mantle of immunity only when essential to ascertain material facts. Immunity or the constitutional privilege for which it is intended as substitute should not be enjoyed beyond a reasonable protection. It relates not to the innocent, but to the guilty, or him who fears prosecution. It is argued that to require the guilty to assert immunity or the constitutional privilege is embarrassing, and might result in the necessity of an astute lawyer to advise when and under what circumstances to assert his rights. That may be so. The circumstances may be such that the court should hold that the witness is entitled to immunity even though not asserted or claimed. No circumstances of that sort, however, are shown here. The very contrary appears.

In this connection, the question of good or bad faith on the part of the prosecuting officers is important. Not only is there a total failure to show any bad faith, but quite the contrary appears from the evidence. There is no evidence that the defendant revealed any fact that will probably be necessary in establishing any guilt that cannot be obtained from other sources, and was not known, or in the possession of the government, except possibly as to the amount of sugar melted by

the sugar company in its various refineries, and as to these melting figures the defendant testified at this trial that he knew absolutely nothing. It is perfectly clear that there was no attempt to extract from this defendant any fact to be used against him on any criminal charge of fraud.

Neither side asked that this case be submitted to the jury. There is no dispute as to the facts, and upon the undisputed facts the defendant has wholly failed to establish the allegations of his plea, and there should therefore be a verdict ordered to that effect.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes