## HEIKE *v.* UNITED STATES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
SOUTHERN DISTRICT OF NEW YORK.

No. 849.   Submitted April 11, 1910.—Decided May 2, 1910.

Appellate jurisdiction in the Federal system of procedure is purely
statutory. *American Construction Co.* v. *Jacksonville, Tampa &*
*Key West Railway Co.*, 148 U. S. 372.
A case cannot be brought to this court by piecemeal; it can only be
reviewed here after final judgment.
A decree is final for the purposes of review by this court when it termi-
nates the litigation on the merits and leaves nothing to be done ex-
cept to enforce by execution what has been determined. *St. Louis,*
*Iron Mountain & Southern R. R. Co.* v. *Express Co.*, 108 U. S. 24.
A judgment overruling a special plea of immunity under statutory
provisions, with leave to plead over, does not, in a criminal case,
terminate the whole matter in litigation, and is not a final judgment
to which a writ of error will lie from this court.
The immunity of one testifying before a grand jury, under the act of
February 25, 1903, 32 Stat. 904, as amended June 30, 1906, 34 Stat.
798, does not render him immune from any prosecution whatever,
but furnishes a defense which, if improperly overruled, is a basis
for reversal of a final judgment of conviction.

THE facts are stated in the opinion.

*Mr. John C. Spooner*, with whom *Mr. John B. Stanchfield* and
*Mr. George S. Graham* were on the brief, for plaintiff in error:

A judgment, to be appealable, need not be one that finally
determines the case. If the judgment from which an appeal
is taken, settles a collateral matter distinct from the general
subject of the litigation, it is a final, appealable judgment
within the law. *McLish* v. *Roff*, 141 U. S. 661; *Bowker* v.
*United States*, 186 U. S. 135, only hold that appeals direct to
this court under § 5 of the act of March 3, 1891, may be taken
from a final judgment alone. They leave unsettled what con-
stitutes a final judgment.

The immunity statute provides: "No person shall be prosecuted," etc., and unless this court entertains this writ of error, the defendant will be denied an immunity from prosecution, given to him under the statute in lieu of the constitutional privilege and safeguard against self-accusation embodied in the Fifth Amendment; and no subsequent action of this court, after either conviction or acquittal, can repair the wrong thus done.

This question is an absolutely new one. While a judgment of *respondeat ouster* is usually not a final or appealable order, the judgment herein is not one of *respondeat ouster*. There is no analogy between this case and those involving *autrefois acquit* or *convict,* former jeopardy, senatorial privilege, and the like. See *Counselman* v. *Hitchcock,* 142 U. S. 547.

No substitute for the protection contemplated by the Amendment would be sufficient were its operation less extensive and efficient. It constituted a protection in advance. The substitute provided by the statute must equal the privilege that has been taken away, and furnish protection from prosecution in advance. See Shiras, J., in *Brown* v. *Walker,* 161 U. S. 592.

This court, having declared that the immunity statute is constitutional, is all the more bound to see that the substitute which it provided shall not be a mockery and a snare.

The order of the court directing plaintiff in error to go to trial, is a violation of the rights of the plaintiff in error as guaranteed to him by the immunity statutes.

To permit the trial to proceed takes away that which never can be restored. In fact, plaintiff in error will have been compelled to testify against himself.

The rule as to what will constitute finality and give the appealable quality is alike in civil and criminal matters. For instances in which decrees analogous to the one involved were held final, see *Forgay* v. *Conrad,* 6 How. 201; *Brush Electric Co.* v. *Electric Imp. Co.,* 51 Fed. Rep. 557.

The controversy in this case over the immunity of plain-

tiff in error settles a collateral matter distinct from the general subject of litigation. See *McGourkey* v. *Toledo &c. Railway Co.*, 146 U. S. 536.

Whenever there is a determination of some question of right, a decision is final in the sense in which an appeal from it is permitted, if it decides and disposes of the whole merits of the case as between the parties on that issue. *Alexander* v. *United States*, 201 U. S. 117, distinguished. That and other similar cases admit that where the court below proceeds to compel the witness to answer, there is a final, reviewable decision or judgment; and see *Interstate Comm. Comm.* v. *Brimson*, 154 U. S. 447; *Interstate Comm. Comm.* v. *Baird*, 194 U. S. 25.

The only thing that can follow in this case, is prosecution; and the court has ordered prosecution, and this stands in the place of the order of the court directing punishment for contempt. The question of immunity is not one involved in the general issue, but a separate and distinct privilege. *Williams* v. *Morgan*, 111 U. S. 684, 698.

Plaintiff in error might have allowed sentence to go against him without asking for any further opportunity of defense, and thus have created a final judgment, but why should he? The judgment entered upon his plea, and the order to proceed to trial, constitute as complete a violation of his rights as that which is reached where a witness is ordered to answer and, upon refusal, is committed for contempt. *Hazeltine* v. *Bank*, 183 U. S. 130; *Schlosser* v. *Hemphill*, 198 U. S. 173.

Appeals taken from the judgment relate to the highest court of a State reversing and remanding the cause for further proceedings, and have no application to this question; nor has *California* v. *San Pablo & Tulare Co.*, 149 U. S. 308, 314; *Mills* v. *Green*, 159 U. S. 651; *Kimball* v. *Kimball*, 174 U. S. 158; *Rankin* v. *The State*, 11 Wall. 380.

The immunity statute does more than merely furnish a defense to a defendant when put on trial. It gives him freedom from actually being put on trial.

An immunized person has greater rights than an innocent person. The former has given up and surrendered something on the strength of the pledge of the United States contained in the statute, while the innocent person has given up nothing. It cannot be said of the innocent person that he shall not be prosecuted; while it has been said most emphatically that the immunized person shall not be prosecuted.

The cases of *Rebstock* v. *Superior Court of San Francisco*, 146 California, 308, those quoted from Wisconsin, and *Regina* v. *Skeen*, 8 Cox, C. C. 143, 153, etc., are inapplicable.

The reference to the Criminal Appeals Act has no relevancy. *United States* v. *Bitty*, 208 U. S. 393, simply decided that this act was constitutional.

Plaintiff in error suffers a grievous hardship if he be compelled to await the end of the case below before having his rights under the immunity plea reviewed. There is no ground for the fears expressed by the Government with reference to the increase of business through interlocutory reviews. *Alexander* v. *United States*, 201 U. S. 117, cited by the Government in fact sustains the contention of plaintiff in error.

*The Solicitor General, Mr. Henry L. Stimson,* Special Assistant to the Attorney General, and *Mr. Felix Frankfurter,* Assistant United States Attorney, for the United States.

Mr. Justice Day delivered the opinion of the court.

The plaintiff in error, Charles R. Heike, was indicted with others on January 10, 1910, for alleged violations of the customs laws of the United States in connection with the fraudulent importation of sugar, and also for conspiracy under § 5440 of the Revised Statutes of the United States to defraud the United States of its revenues. Heike appeared and filed a special plea in bar claiming immunity from prosecution under the act of February 25, 1903, c. 755, 32 Stat. 904, as amended June 30, 1906, c. 3920, 34 Stat. 798. The plea set up in substance that Heike had been called upon to

testify before the grand jury in matters concerning the prosecution against him, and had thereby become immune from prosecution under the law. The Government filed a replication, taking issue upon the matters set up in the plea. The issues thus raised were brought to trial before a jury in the Circuit Court of the United States for the Southern District of New York, and at the conclusion of the testimony the Government and the defendant each moved for direction of a verdict, and the court thereupon instructed the jury to find the issues joined in favor of the Government. Upon application by Heike he was granted the privilege of pleading over, and he thereupon entered a plea of not guilty, and the case was set for trial on March 1, 1910.

No judgment having been entered in the case mandamus proceedings were brought in this court, and in pursuance of its order a judgment *nunc pro tunc* was entered as of February 14, 1910, as follows: "Judgment be and is hereby entered for the United States upon the verdict with leave to the defendant to plead over."

On February 25. 1910, a writ of error was allowed to the Circuit Court from this court by one of its justices. The Government then moved, February 28, 1910, to vacate the order allowing the writ. That motion was overruled, March 14, 1910, and the Government made the present motion to dismiss the writ of error, upon the ground that the judgment entered as of February 14, 1910, is not a final judgment within the meaning of the Court of Appeals Act.

The motion to dismiss brings to the attention of the court the important question of practice as to whether, after a judgment has been entered upon a verdict setting up the plea of immunity under the act of February 25, 1903, as amended June 30, 1906, finding the issues against the defendant, with leave given to plead over, and a plea of not guilty entered, on which no trial has been had, such judgment is, or is not, a final judgment reviewable by writ of error

from this court where a constitutional question is involved, under § 5 of the act of March 3, 1891, c. 517, 26 Stat. 826.

The appellate jurisdiction in the Federal system of procedure is purely statutory. *American Construction Co.* v. *Jacksonville, Tampa & Key West Ry. Co.*, 148 U. S. 372, 378. For many years it did not exist in criminal cases. It has been granted by statute in certain cases; and criminal cases in which are involved a deprivation of constitutional rights, may be brought to this court by writ of error under § 5 of the Court of Appeals Act. *Burton* v. *United States*, 196 U. S. 283.

In the case at bar it is the contention of the plaintiff in error that he was deprived of the constitutional right of trial by jury in the direction by the court that the jury find a verdict against him upon his plea in bar. The question then is, Is the judgment entered *nunc pro tunc* as of February 14, 1910, a reviewable one under the statute? That judgment in effect denied the validity of the plea in bar, and left the defendant to plead over, which he did, putting in issue the averments of the indictment.

The construction of § 5 of the Court of Appeals Act was before this court in the case of *McLish* v. *Roff*, 141 U. S. 661, 665, and it was there held that the allowance of appeals or writs of error under that section must be understood to have the meaning which those terms had always had under acts of Congress relating to the appellate jurisdiction of this court, and that taken in that sense appeals or writs of error could only be allowed in cases in which there had been a final judgment. Mr. Justice Lamar, who spoke for the court in that case, pointed out that under the Judiciary Act of 1789 no appeal would lie to this court except from final judgments or decrees, and further stated that this was only declaratory of the settled practice of England, where no writ of error would lie except from a final judgment; and if the writ was made returnable before such judgment it would be quashed, and in this connection, speaking for the court, the learned justice said:

"From the very foundation of our judicial system the ob-

ject and policy of the acts of Congress in relation to appeals and writs of error . . . have been to save the expense and delays of repeated appeals in the same suit, and to have the whole case and every matter in controversy in it decided in a single appeal."

*McLish* v. *Roff, supra,* has been followed and approved in this court. *American Construction Co.* v. *Jacksonville, Tampa & Key West Ry.,* 148 U. S. 372; *Kirwan* v. *Murphy,* 170 U. S. 205, 209; *Ex parte National Enameling Co.,* 201 U. S. 156.

It may, therefore, be regarded as the settled practice of this court that a case cannot be brought here by piecemeal, and is only to be reviewed here after final judgment by direct appeal or writ of error in a limited class of cases under § 5 of the Court of Appeals Act.

It is unnecessary to enter upon a full consideration of what constitutes a final judgment, a subject of much discussion. The definition of a final judgment or decree was tersely stated by Mr. Chief Justice Waite in *St. Louis, Iron Mountain & S. R. R. Co.* v. *Express Co.,* 108 U. S. 24, 28, in these terms: "A decree is final for the purposes of an appeal to this court when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined."

If we apply the definition herein contained of a final judgment or decree it appears certain that the judgment of *respondeat ouster,* leaving the case with issue joined upon the plea of not guilty, does not dispose of the whole matter litigated in this proceeding, leaving nothing to be done except the ministerial act of executing the judgment. The thing litigated in this case is the right to convict the accused of the crime charged in the indictment. Certainly that issue has not been disposed of, much less has a final order been made concerning it, leaving nothing but an execution of it yet undone. The defendant was indicted for the crime alleged, and being apprehended he had a right to raise an issue of law upon the indictment by demurrer, to plead in bar, or to plead the general

. issue.  He chose to plead in bar immunity from prosecution
by reason of the statute referred to.  That issue was, by di-
rection of the court, whether properly or improperly, held
against him and the verdict of the jury and the judgment of
*respondeat ouster* duly entered.  At the common law upon the
failure of such plea in·a case of misdemeanor it was usual at
once to sentence the defendant as upon conviction of guilt of
the offense charged.  In cases of felony it was usual to permit a
plea of not guilty after judgment over.  In the case at bar the
record shows after the return of the verdict the plaintiff in
error's counsel asked to be permitted to plead, and was al-
lowed that privilege.  As the case now stands, upon the plea :·
of not guilty, upon which the issue raised must be tried to a
jury, certainly the whole matter has not been disposed of.
It may be that upon trial the defendant will be acquitted on
the merits.  It may happen that for some reason the trial will
never take place.  In either of these events there can be no
conclusive judgment against the defendant in the case.  It is
true that in a certain sense an order concerning a controlling
question of law made in a case is, as to that question, final.
Many interlocutory rulings and orders effectually dispose of
some matters in controversy, but that is not the test of finality
for the purposes of appeal or writ of error.  The purpose of
the statute is to give a review in one proceeding after final
judgment of matters in controversy in any given case.  Any
contrary construction of the Court of Appeals Act may in-
volve the necessity of examining successive appeals or writs
of error in the same case, instead of awaiting, as has been the
practice since the beginning of the Government, for one re-
view after a final judgment, disposing of all controversies in
that case between the parties.

But it is urged by the learned counsel for the plaintiff in
error that this judgment must be held to be final for the pur-
pose of review, otherwise the Government cannot keep the con-
tract of immunity which it has made with the accused, by
virtue of the terms of the immunity statute, which provides:

"No person shall be prosecuted or be subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may testify or produce evidence, documentary or otherwise, in any proceeding, suit, or prosecution under said acts [Sherman anti-trust and interstate commerce acts]. . . ."

By the amendatory act of June 30, 1906, c. 3920, 34 Stat. 798, it was provided that the above immunity shall extend only to a natural person who, in obedience to a subpœna, gives testimony under oath or produces evidence, documentary or otherwise, under oath.

In view of the provisions of this act it is argued that the complete immunity promised is not given unless the person entitled to the benefits of the act is saved from prosecution, for, it is contended, that if the act is to be effective it means not only immunity from punishment, but from prosecution as well. It is admitted in the brief of the learned counsel for the plaintiff in error that prosecution must necessarily proceed so far as an indictment and apprehension are concerned, but when the plea of immunity under this act is entered, if well taken, the prosecution must be ended, as the statutes provide that no person shall be prosecuted, etc. But we are of opinion that the statute does not intend to secure to a person making such a plea immunity from prosecution, but to provide him with a shield against successful prosecution, available to him as a defense, and that when this defense is improperly overruled it may be a basis for the reversal of a final judgment against him. Such promise of immunity has not changed the Federal system of appellate procedure, which is not affected by the immunity statute, nor does the immunity operate to give a right of review upon any other than final judgments.

A question very analogous to the one before us was made and decided in the case of *Brown* v. *Walker*, 161 U. S. 591, in which the constitutionality of an immunity statute was sustained. The statute undertook to give immunity after testimony before the Interstate Commerce Commission, and to

provide that no person should be prosecuted nor subject to any penalty, etc., concerning matters which he testified to by the production of documents or otherwise before the Commission. In that case, as in this, the contention was made that the immunity was not perfect, because the witness might still be prosecuted, and, therefore, the promised immunity was insufficient to afford constitutional protection. Answering that contention this court said (161 U. S. 608):

"The same answer may be made to the suggestion that the witness is imperfectly protected by reason of the fact that he may still be prosecuted and put to the annoyance and expense of pleading his immunity by way of confession and avoidance. This is a detriment which the law does not recognize. There is a possibility that any citizen, however innocent, may be subjected to a civil or criminal prosecution and put to the expense of defending himself, but unless such prosecution be malicious he is remediless, except so far as a recovery of costs may partially indemnify him."

The Constitution of the United States provides that no person shall be twice placed in jeopardy of life and limb for the same offense, yet the overruling of a plea of former conviction or acquittal has never been held, so far as we know, to give a right of review before final judgment. In the case of *Rankin* v. *The State*, 11 Wall. 380, an attempt was made to bring to this court a judgment of a state court upon a plea in bar of former conviction in a capital case. But this court, speaking by Mr. Justice Bradley, said:

"It is a rule in criminal law *in favorem vitæ*, in capital cases, that when a special plea in bar is found against the prisoner, either upon issue tried by a jury or upon a point of law decided by the court, he shall not be concluded or convicted thereon, but shall have judgment of *respondeat ouster*; and may plead over to the felony the general issue, 'not guilty.' 4 Blackstone's Commentaries, 338. And this is the effect of the judgment of reversal rendered by the Supreme Court of Tennessee in this case, so that in no sense can that judgment

be deemed a final one. The case must go back and be tried upon its merits, and final judgment must be rendered before this court can take jurisdiction. If after that it should be brought here for review, we can then examine the defendant's plea and decide upon its sufficiency."

It may thus be seen that a plea of former conviction under the constitutional provision that no person shall be twice put in jeopardy for the same offense does not have the effect to prevent a prosecution to final judgment, although the former conviction or acquittal may be finally held to be a complete bar to any right of prosecution, and this notwithstanding the person is in jeopardy a second time if after one conviction or acquittal the jury is empanelled to try him again. We think, then, that the effect of the immunity statute in question is not to change the system of appellate procedure in the Federal courts and give a right of review before final judgment in a criminal case, but was intended to provide an effectual defense against further prosecution, which if denied may be brought up for review after a final judgment in the case.

We therefore reach the conclusion that the motion to dismiss the present writ be sustained, and it is so ordered.

*Writ of error dismissed.*