### UNITED STATES v. GALLAGHER et al.

First Division. Juneau. January 2, 1926.

No. 1813–B.

Criminal Law ⚖═280(2)—Constitutional Law—Witnesses Called Before the Grand Jury to Give Evidence, and Afterwards Indicted for Connection with the Offenses about Which They Testified—Pleas in Bar.

 The defendants were indicted, with others, for conspiracy to violate the National Prohibition Act (27 USCA). They filed pleas in abatement, alleging that they were called before the grand jury and testified while the matters and things upon which the indictment was found were being investigated by the grand jury. The government filed a demurrer to the plea, and in the same pleading denied that either of the defendants gave any testimony tending to incriminate them. *Held*, the pleas do not allege, and it is not shown, that the defendants testified before the grand jury to any matter or thing which tended to incriminate them, and the pleas are therefore insufficient as against the demurrer. It appears there was no testimony given by either before the grand jury tending to incriminate him or either of them, and for these reasons the pleas are overruled.

C. E. Hoxie, Neil Gallagher, Ole Frederickson, and others were indicted by the grand jury of this division on December 3, 1925, for conspiracy to violate the National Prohibition Act (27 USCA). The defendants Gallagher and Frederickson, on December 10, entered a plea in abatement, setting up the presence, in the grand jury room, during the consideration of a case by it, of an unauthorized person, and, further, that they

⚖═See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

were called before the grand jury and testified while the matters and things upon which the indictment was found were being investigated by the grand jury. This plea in abatement having been overruled by the court upon the demurrer of the prosecution and testimony submitted, the defendants Gallagher and Frederickson each filed the pleas now under consideration. These pleas are practically a repetition of the second count of their former plea in abatement, and identical in form. Answering the pleas, the United States attorney first entered a general demurrer as to their sufficiency, and, in the same pleading, denied all the material allegations of the pleas, except that the defendants appeared before the grand jury in obedience to a subpœna and testified before it, and further sets forth that neither of the pleaders gave any testimony tending to incriminate them.

The pleas of the defendants set forth in substance that, while the grand jury was in session, in obedience to a subpœna issued out of this court so to do, each of said defendants appeared before the grand jury while it was regularly in session, and did then and there give evidence and testified concerning the matters and things charged against him in the indictment; that he was informed, on his appearance before the grand jury in obedience to the subpœna, that he would be required to testify as to the matters and things then being investigated by the grand jury; that is to say, a violation of the National Prohibition Act by Charles Hoxie and others, and was informed that, if he so testified, he would not be subjected to any penalty or forfeiture on account of any transaction, matter, or thing as to which, in obedience to said subpœna, he might testify, tending to incriminate himself or subjecting himself to a penalty or forfeiture; that thereupon he did testify to the matters and things charged in the indictment; that in so testifying he was compelled to give evidence against himself, in violation of his constitutional rights under the Fifth Amendment.

A. G. Shoup, U. S. Dist. Atty., of San Jose, Cal.

Hellenthal & Hellenthal and H. L. Faulkner, all of Juneau, for defendants.

REED, District Judge. The material allegations of both pleas are the promises of immunity, if the defendants did

testify, and that they were compelled to testify against themselves. It is noted that there is no allegation in either plea that the defendant was compelled to or did give evidence incriminating or tending to incriminate himself.

At the hearing had on the pleas, the demurrer to the sufficiency of the pleas was taken under advisement by the court, and testimony submitted before the court as to what testimony was given by the defendants in the proceeding before the grand jury. No request for a jury trial was made by either on the pleas, but the defendants each presented the matter to the court of his own motion. In pleas of this nature, where the matter is presented to the court or jury, the question as to what testimony was given before the grand jury is to be decided on the weight of the testimony submitted, and an affirmative plea being made by the defendants, and a denial of the facts set forth in the plea being made by the prosecution, the burden of proof is upon the defendant pleaders.

Upon argument of the case, it was disclosed that the defendants relied upon section 30, title 2, of the National Prohibition Act (27 USCA § 47), as giving them immunity from prosecution. The National Prohibition Act, in section 30, title 2, provides:

"That no person shall be excused, on the ground that it may tend to incriminate him or subject him to a penalty or forfeiture, from attending and testifying, or producing books, papers, documents, and other evidence in obedience to a subpoena of any court in any suit or proceeding based upon or growing out of any alleged violation of this act; but no natural person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing as to which, in obedience to a subpoena and under oath, he may so testify or produce evidence, but no person shall be exempt from prosecution and punishment for perjury committed in so testifying."

It would appear from the argument and plea of the defendants that the defendants considered that, if they appeared before the grand jury to testify relative to the matters and things upon which an indictment was afterwards found by the grand jury, they would be immune under this statute, even though their testimony in no wise incriminated or tended to incriminate them.

The claim of the prosecution, on the other hand, is that, if the defendants gave no testimony in any way tending to incriminate themselves, then neither the Fifth Amendment to

the Constitution nor the statute quoted above would apply; that one is correlative and coterminous with the other.

The section in question is practically identical with the immunity section contained in the Appropriation Act of February 25, 1903, 32 Stat. 904, as amended by the Act of June 30, 1906, 34 Stat. 798 (49 USCA § 47 [U. S. Comp. St. § 8578]), which provided that:

"No person shall be prosecuted or be subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may testify or produce evidence, documentary or otherwise, in any proceeding, suit, or prosecution under said acts." ·

The acts referred to were the Anti-trust and Interstate Commerce Acts. See U. S. v. 155 Cases of Intoxicating Liquor (C. C. A.) 297 F. 411.

The immunity clause last referred to was considered by the Circuit Court of the Southern District of New York (175 F. 852) and by the Supreme. Court in the case of Heike v. U. S., 217 U. S. 423, 30 S. Ct. 539, 54 L. Ed. 821. A short history of this case would be illuminating. In 1910 Heike was indicted, with others, by the grand jury of the Southern district of New York, for conspiracy to defraud the United States of customs duties. The case came before the District Court on a special plea in bar of immunity, based upon the paragraph last quoted. District Judge Martin discusses the question of immunity somewhat lengthily, and adduces a rule which he claims is the true rule under which a claim of immunity under such statute could be allowed. He thus summarizes his conclusion:

"The true rule is: Is it probable, from the evidence adduced, that the defendant testified to some matter or thing for or on account of which he now stands charged as a criminal?"

The judge then considers the plea and the evidence submitted, and because of a lack of evidence of any testimony tending to incriminate the defendant, the plea was overruled and the defendant was allowed to plead over. The defendant then entered a plea of not guilty. Before trial, upon application to the Supreme Court of the United States, a mandamus was issued by the Supreme Court, and in pursuance of an order of the Supreme Court a judgment was entered in favor of the United States and against Heike on the plea in bar, and a writ of error was then taken to the Supreme Court. 217

7 A.R.—24

U. S. 423, 30 S. Ct. 539, 54 L. Ed. 821. A motion was then
made in the latter court to dismiss the writ of error, for the
reason that the judgment on the plea in bar was not a final
judgment. The court held—I quote from the syllabus—that:

"A judgment overruling a special plea of immunity under statutory
provisions, with leave to plead over, does not in a criminal case ter-
minate the whole matter in litigation, and is not a final judgment to
which a writ of error will lie" from that court. "The immunity of
one testifying" under the acts cited "does not render him immune
from any prosecution whatever, but furnishes a defense which, if im-
properly overruled, is a basis for reversal of final judgment of con-
viction."

The court, after stating the contention of counsel for de-
fendant and quoting the section referred to, uses this language:

"In view of the provisions of this act, it is argued that the com-
plete immunity promised is not given unless the person entitled to the
benefits of the act is saved from prosecution for, it is contended, that
if the act is to be effective it means not only immunity from pun-
ishment, but from prosecution as well. It is admitted in the brief of
the learned counsel for the plaintiff in error that prosecution must
necessarily proceed so far as an indictment and apprehension are con-
cerned, but when the plea of immunity under this act is entered, if well
taken, the prosecution must be ended, as the statutes provide that no
person shall be prosecuted," etc.

This seems to be the contention of the defendants in this ac-
tion. The court, however, answering this contention, con-
tinues:

"But we are of opinion that the statute does not intend to secure
to a person making such a plea immunity from prosecution, but to pro-
vide him with a shield against successful prosecution, available to
him as a defense, and that when this defense is improperly overruled
it may be a basis for the reversal of a final judgment."

In reply to the suggestion that the promised immunity was
insufficient to provide the constitutional protection, the court
said:

"The same answer may be made to the suggestion that the witness
is imperfectly protected by reason of the fact that he may still be
prosecuted and put to the annoyance and expense of pleading his im-
munity by way of confession and avoidance. This is a detriment
which the law does not recognize. There is a possibility that any citi-
zen, however innocent, may be subjected to a civil or criminal prose-
cution and put to the expense of defending himself, but unless such
prosecution be malicious he is remediless, except so far as a recovery

of costs may partially indemnify him." Heike v. U. S., 217 U. S. 423–432, 30 S. Ct. 539, 542 (54 L. Ed. 821).

The Supreme Court thereupon dismissed the writ of error, and the case came up again before the Circuit Court for the Southern District of New York (175 F. 852) and the defendant was found guilty on his plea of not guilty. He appealed on two grounds, one of which was the overruling of his plea in bar, and the other the finding him guilty as charged. The Circuit Court of Appeals, in rendering its decision, found that the testimony of Heike fell short of what the statute contemplated as tending to incriminate him. Heike v. U. S., 192 F. 86. Again the case came before the Supreme Court of the United States, and was finally decided by that court, and was reported in 227 U. S. 131, 33 S. Ct. 226, 57 L. Ed. 450, Ann. Cas. 1914C, 128. The court, considering the case through Justice Holmes, says:

"The petitioner contended that, as soon as he had testified upon a matter under the Sherman Act, he had an amnesty by the statute from liability for any and every offense that was connected with that matter in any degree, or, at least, every offense towards the discovery of which his testimony led up, even if it had no actual effect in bringing the discovery about. At times the argument seemed to suggest that any testimony, although not incriminating, if relevant to the later charge, brought the amnesty into play. In favor of the broadest construction of the immunity act, it is argued that when it was passed there was an imperious popular demand that the inside working of the trusts should be investigated, and that the people and Congress cared so much to secure the necessary evidence that they were willing that some guilty persons should escape, as that reward was necessary to the end. The government, on the other hand, maintains that the statute should be limited as nearly as may be by the boundaries of the constitutional privilege of which it takes the place.

"Of course there is a clear distinction between an amnesty and the constitutional protection of a party from being compelled in a criminal case to be a witness against himself. Amendment V. But the obvious purpose of the statute is to make evidence available and compulsory that otherwise could not be got. We see no reason for supposing that the act offered a gratuity to crime. It should be construed, so far as its words fairly allow the construction, as coterminous with what otherwise would have been the privilege of the person concerned. We believe its policy to be the same as that of the earlier Act of February 11, 1893, c. 83, 27 Stat. 443, which read, 'No person shall be excused from attending and testifying,' etc.; 'but no person shall be prosecuted,' etc., as now, thus showing the correlation between constitutional right and immunity by the form. That statute was passed because an earlier one, in the language of a late case, 'was not coex-

tensive with the constitutional privilege.' American Lithographic Co.
v. Werckmeister, 221 U. S. 603, 611 [31 S. Ct. 676, 55 L. Ed. 873].
Compare Act of February 19, 1903, c. 708, sec. 3, 32 Stat. 847; 848.  To
illustrate, we think it plain that merely testifying to his own name,
although the fact is relevant to the present indictment as well as to
the previous investigation, was not enough to give the petitioner the
benefit of the act.  See 3 Wigmore, Evidence, § 2261."

Wigmore, on page 3178, § 2281, thus says:

"It may be noticed that the immunity thus conceded is not to be
obtained by a merely collusive or pretended process of disclosure;
there must be a compulsion, bona·fide submitted to.  Moreover, the
immunity obtained under these statutes cannot extend to a prosecu-
tion for perjury committed in the very disclosure itself; nor does the
usual express statutory proviso in that tenor make them any the less
effective.  If argument were needed, it would be sufficient merely
to appeal to the terms of the privilege, which forbids that one be com-
pelled to give evidence against himself; for (a) the perjured utterance
is not evidence or testimony to a crime, but is the very act of crime
itself; (b) the compulsion is not to testify falsely, but to testify truly;
and (c) the privilege, by hypothesis, would have been violated only if
the witness had truly confessed his crime, but if he denies it and false-
ly exonerates himself, he has confessed no fact against himself; hence
his privilege has not been infringed by the actual answer, even though
it might have been by some other answer; e. g., if a witness is asked,
'Did you kill Doe?'  and answers, 'No,' it is not, as it turns out 'against
himself,' and what it might have been is immaterial."

In Hale v. Henkel, 201 U. S. 43, 26 S. Ct. 370, 50 L. Ed. 652,
the Supreme Court said:

"The interdiction of the Fifth Amendment operates only where a
witness is asked to incriminate himself—in other words, to give tes-
timony which may possibly expose him to a criminal charge."

The constitutional right, therefore, is limited only to those
cases in which the answer would tend to incriminate, and it
follows that, if the answer does not in any way tend to incrimi-
nate the witness, the constitutional provision would not apply.
Congress in 1868 (15 Stat. 37) passed an immunity statute for
those testifying to facts which might incriminate, for the
purpose of giving amnesty to those so testifying.  This section
(860 of the Revised Statutes) was declared insufficient by the
Supreme Court in an elaborate opinion in the case of Counsel-
man v. Hitchcock, 142 U. S. 547, 12 S. Ct. 195, 35 L. Ed. 1110.
Thereupon Congress passed a statute containing the clause
above quoted, which the court, in Brown v. Walker, 161 U. S.
591, 16 S. Ct. 644, 40 L. Ed. 819, declared valid, as giving im-

munity, and held that it deprived the witness of his constitutional right of refusal to answer. The purpose of the section has many times been passed upon. As was said by Justice Holmes, it was correlative to the Fifth Amendment; that is to say, the Fifth Amendment and the statute are reciprocal. In other words, if there is no testimony given by the witness, tending to form the basis of a criminal charge, neither the constitutional interdiction nor the correlative statute would apply. United States v. Skinner (D. C.) 218 F. 870–880.

In the present case, the pleas of the defendants do not allege that they testified before the grand jury to any matter or thing which tended to incriminate them, and the pleas are therefore insufficient as against the demurrer; nor does the testimony submitted on their behalf, presented before the court at the request of the defendants, show, or tend to show, that any matter or thing which they or either of them testified to, tended to incriminate them or form the basis of a criminal charge against them. In the Gallagher case the defendant's testimony was to the effect only that he testified before the grand jury, and in the Frederickson case there was presented only the record of his testimony in the contempt proceeding, wherein he testified, in answer to queries, that he did not know or did not remember, and did not want to answer any question propounded. On his statement to the court that he would be willing to testify further, he was again allowed to go before the grand jury; but what he may have testified to then is not shown by the record. The presumption, however, is that his testimony was of the same character as before, in view of the specific denials and affirmative matter set forth by the prosecution in answer to the pleas.

The pleas of the defendants Gallagher and Frederickson will therefore be overruled.