## No. 177.

### THE STATE OF LOUISIANA VS. JIM JONES.

A juror who, when sworn on his *voir dire*, says that from what he knows of the character of the accused he has a little prejudice against him, but that this feeling can, in no manner, affect his verdict and that he will be governed solely by the law and the evidence, is not incompetent.

Where the mortal blow is given in one parish, but death ensues in another, the crime may be prosecuted in either parish, and it is not essential to the validity of the indictment in such case that said facts should be averred therein. The crime may be charged to have been committed in the parish where the bill is found.

Where a person, after being wounded, sends for a minister and declares to him that he expects to die, has no hope of recovery and continues to speak in this strain till his death, the condition of mind prerequisite to making a valid dying declaration, is sufficiently proved.

APPEAL from the Second District Court, Parish of Bossier. *Drew*, J.

---

*J. A. W. Lowry* and *M. J. Crain*, District Attorneys, for the State, Appellee.

*J. E. Reynolds* for Defendant and Appellant.

---

The opinion of the Court was delivered by

TODD, J. The defendant was convicted of murder, and appeals from a sentence of death imposed under the unqualified verdict of the jury.

1. He first complains of the ruling of the trial judge declaring one George Gilmer a competent juror.

This juror was sworn on his *voir dire* and stated, quoting: "That from his knowledge of the previous character of the defendant that he had some little prejudice against the defendant, but that he could lay this aside and try the case according to the law and the evidence re-

State vs. Jones.

gardless of this prejudice and do exact justice between the State and defendant, and be governed by the law and the evidence."

We know of no law and have been pointed to none that, under the condition of mind disclosed by the juror in the above statement, would disqualify him as a juror. He was certainly competent; but while so holding we think it the wiser course in a judge to exclude from the jury every man who entertains even a little prejudice against an accused from a knowledge of his reputation, or other mere personal grounds.

2. A motion for a new trial was filed and was urged mainly, if not exclusively, on the ground that the mortal blow had been given in the parish of Bossier, where the trial was had, but the death ensued in another parish, and that these facts were not set forth in the indictment, and that it was essential they should have been so averred; and an affidavit of the judge presiding showing said facts was annexed to the motion.

Of course, it was an irregularity to seek to take advantage of such an alleged defect in the indictment and proceedings by a motion for a new trial, but inasmuch as no objection is found of record against this mode of presenting the issue, we shall consider it.

The object of setting out in an indictment the place of death, is to show the jurisdiction of the court over the offense. Under the common law, such an omission or failure might be fatal to the prosecution. Section 988 of the Revised Statutes of this State, however, provides that when a crime "shall be begun in one parish and completed in another, it may be dealt with, inquired of, tried, determined and punished in either of the parishes in the same manner as if it had been wholly committed therein."

Under this Statute the district court of Bossier, where the mortal blow was inflicted, was expressly clothed with jurisdiction over the offense and its prosecution; and in consideration of this fact, it was legitimate and competent to charge in the indictment found by the grand jury of that parish, that the murder was therein committed, as was done, and not required to set out in detail that the death occurred in one parish and the mortal wound was inflicted in another, since the place of death need only be averred, as before stated, for the purpose of showing the jurisdiction in the court. The substantial fact charged in the indictment was the murder, the place where the victim died was an immaterial circumstance, considered with reference to the law investing with jurisdiction over the crime the court of the place where the mortal stroke was given.

The counsel for the accused cites the case of the State vs. Cummings, 5 Ann. 331, as opposed to these views. We do not so construe that decision, the facts relating to the offense and prosecution are very unsatisfactorily and obscurely set out in the opinion of the Court, but if there is anything in that case opposed to the doctrine now announced, we are not disposed to follow it. The motion for a new trial was properly overruled.

3. The counsel for the accused took a bill of exceptions to the admissibility of a statement of the murdered woman, offered and received in evidence as her dying declarations. His objection to the same was, substantially, that it was not shown with sufficient certainty that at the time of the statement the person was under an apprehension of impending dissolution. The evidence on this point, as stated by the trial judge in the bill of exceptions, is as follows:

"The witness Williams stated to the court that the deceased sent for him, a minister of the gospel, to come and pray for her, and when he reached her bed-side she told him she sent for him to pray for her, that she did not expect to live and wanted the prayers of herself and the church, and that he and some of the members of the church prayed for her; that he watched her and was with her until her death * * * that at no time did she express any hope of life, but all the time said she would not get well and that she felt and expected she would die. * * * * * Both physicians testified there was no hope for her recovery."

This evidence shows, we think, that the woman fully believed that she would die, and that the statement was made under a full sense of approaching dissolution. All authorities concur that, under similar expressions touching the expectation and belief of death, the statement must be regarded as a dying declaration.

The ground for the admission of such a declaration as evidence, is that in the expectation of approaching death, all temptation to falsehood either from interest, hope or fear will be renounced; and the awful nature of the situation will impress the declarant as strongly with the necessity of telling the truth as the solemn obligation of an oath. We must infer from the evidence that such was the situation of this party, and her mental condition when her declaration was made. She not only declared once that she had no hope of living, but according to the evidence, continued to do so until death came. Even if there be but one declaration of the kind, it matters not that several days

may elapse, as in this case, before the person dies. Whart. Crim. Ev., 8th ed., Secs. 281, 283.

This completes the view of the proceedings in the case as the record presents them, and we can find nothing therein to relieve the unfortunate accused from the impending sentence.

Judgment affirmed.