PHILIP COLEMAN *v.* STATE OF MISSISSIPPI.

1. CRIMINAL LAW.    *Murder.    Venue.    Fatal blow in one county.    Death in another.    Code* 1892, § 1335.    *Evidence.*

Where an indictment for murder charges that the crime was committed in the county in which it was preferred, evidence that the death occurred in another county is admissible, if the fatal blow was struck in the county in which the indictment was found, under Code 1892, § 1335, providing that where the fatal blow is struck in one county and death occurs in another the offender may be indicted and tried in either county.

2. SAME.    *Code* 1892, § 1334.    *Jurisdiction.*

If one accused of murder be indicted in the county where the death occurred, he cannot afterwards be indicted in another county where the fatal blow was struck, although the first indictment be dismissed by the state, since Code 1892, § 1334 provides, in such case, that the jurisdiction shall be in either county where the prosecution shall first be begun.

3. SAME.    *Right to object.*

In such case the fact that there is no contest between the courts of the two counties does not deprive the defendant of the right to object to the jurisdiction of the court of the county where the prosecution was not first begun.

FROM the circuit court of, second district, Coahoma county. HON. SAMUEL C. COOK, Judge.

Coleman, appellant, was indicted, tried, and convicted of the murder of Ella Coleman, his wife, and sentenced to the penitentiary for life, from which conviction and sentence he appealed to the supreme court.    The facts are fully stated in the opinion of the court.

*Denton & Cox,* for appellant.

The offense charged in the indictment in this case was committed "partly in one county and partly in another."    The mortal blow was struck in Coahoma county and death resulted

therefrom in Quitman county. Appellant was first indicted in Quitman county, and the circuit court of Quitman county therefore obtained exclusive jurisdiction of the case. Code 1892, § 1334, 12 Enc. P. & P., 151. It was not proper to *nolle pros* the indictment in Quitman county for the sole purpose of obtaining a change of venue on behalf of the state from Quitman county to Coahoma county, as alleged in the plea in abatement and admitted by the demurrer thereto. *State* v. *Pauley,* 12 Wis., 537. Section 1335 of our code, if constitutional, was certainly not intended to give the prosecution, in a case of this kind, leave to play battle-door and shuttle-cock with defendant's constitutional rights.

The indictment in this case alleges that the murder was committed in the second district of Coahoma county. It was, therefore, improper to admit testimony showing that the mortal blow only was delivered in Coahoma county, and that the death resulted therefrom in Quitman county. The venue should have been laid according to the facts. 10 Enc. P. & P., 526; *People* v. *Scott,* 74 Cal., 95; citing and approving, *Hoskins* v. *People,* 16 N. Y., 344; Clark's Criminal Procedure, 251; Bishop's Criminal Procedure, sec. 381, 3d ed.; *Norris* v. *State,* 33 Miss., 373; *Watson* v. *State,* 36 Miss., 593; *Johnson* v. *State,* 47 Miss., 671.

*J. W. Cutrer,* on same side.

Under the common law, where the blow was struck in one county or jurisdiction and the death happened in another, while it has been held by some courts, in order that there might not be a failure of justice, that jurisdiction to try the offense was vested in the court where the death occurred, Chief Justice Sharkey states the conclusion of this court upon that point as follows:

"The better opinion seems to have been that by the common law when the blow was given in one county and the death happened in another, the offender was not indictable in either." *Stoughton* v. *State,* 13 Smed. & M., 255.

In that state of the law, the legislature enacted a statute conferring jurisdiction upon the court where the death happened. In the case of Stoughton the defendant was tried in Perry county, in which the fatal blow was struck, but it was proven on the trial that death resulted in Harrison county. From a judgment of conviction Stoughton appealed, and the court held that "If it could be clearly shown that he was triable there (in Perry county) by the common law, perhaps the statute might be regarded as giving the additional power to try him in the county where the death happened, without interfering with the jurisdiction as at the common law. But as the question was, to say the least of it, doubtful at common law, the statute must be regarded as the only law on the subject." *Riggs* v. *State,* 4 Cush. (26 Miss.), 51; *Turner* v. *State,* 6 Cush. (28 Miss.), 684.

Neither the courts of Coahoma or Quitman counties had jurisdiction, except by force of Code 1892, § 1335, which gave jurisdiction to the courts of either county.

It is necessary that venue should be laid with absolute certainty and that the particular offense charged must be stated with precision, and every material circumstance in regard to place must be averred with that degree of certainty which is sufficient to exclude intendment. *Riggs* v. *State,* 4 Cush. (26 Miss.), 51; *Turner* v. *State,* 6 Cush. (28 Miss.), 684.

If the statute, Code 1892, § 1335, was intended to permit an accused to be indicted for a murder committed in one county, and thereupon to be tried for murder committed in another county, or committed partly in one county and partly in another, it is not constitutional.

The statute, however, was not intended to have any such effect, and it must be held that when it is sought to charge an accused with a crime for which he is triable as provided by the statute, the indictment against him must state with particularity and precision the facts which give the court jurisdiction, otherwise the court is not able to proceed because of a variance be-

tween the indictment and the proof. *Norris* v. *State,* 33 Miss., 373.

This court has repeated the declaration that the courts of each county have jurisdiction only of offenses committed completely within their territory. *Watson* v. *State,* 36 Miss., 606; *Johnson* v. *State,* 47 Miss., 671.

The requirement that the facts which give the court jurisdiction must be stated where the jurisdiction is special or statutory and not vested in the court by common law is maintained in the following cases: *People* v. *Haskins,* 16 N. Y., 344; *People* v. *Scott,* 74 Cal., 95; *Connor* v. *State,* 29 Fla., 455; *People* v. *Davis,* 56 N. Y., 99; *Commonwealth* v. *Gillon,* 2 Allen (Mass.), 502; *State* v. *Robinson,* 14 Minn., 447; *People* v. *Dougherty,* 7 Cal., 398; *Chivvarrio* v. *State,* 15 Tex. App., 413; *Miles* v. *State,* 23 Tex. App. 413; *State* v. *Fish,* 4 Ired. L. (N. C.), 220; *State* v. *Pugsley,* 75 Iowa 742.

*J. N. Flowers,* assistant attorney general, for appellee.

The most serious question in this case is presented by the plea in abatement and the demurrer thereto. Under § 1335 of the code, Coahoma county or Quitman county had jurisdiction of this crime originally, but the question is whether Quitman county, having first assumed jurisdiction, did not then have it exclusively, for all purposes and to the end.

The Iowa court held in *Ex Parte Baldwin,* 69 Iowa, 502, that the court which first obtains jurisdiction of the person of the accused retains it to the end, to the exclusion of the court of the other county, although he might have first been indicted in the other county. See also cases cited in notes to *Weller* v. *Sternberg,* 5 L. R. A., 221.

But the issue here is not between the two courts. The Quitman county court had voluntarily relinquished its jurisdiction before the Coahoma county court assumed it. The reason of the rule fails in this case. There was no indictment against this accused in Quitman county pending at the time he was in-

dicted in Coahoma. The rule extends only to the right of one court to retain jurisdiction first assumed. It is a right which the court can relinquish if it sees proper.

Section 1334 of the code does not cover the case provided for in § 1335, and the last clause of the former section fixing the jurisdiction in the county where prosecution shall be first begun does not govern in cases provided for by § 1335. We submit that our statute giving the courts of both counties jurisdiction where the mortal blow is struck in one county and the death occurs in another is to be construed just as if it provided in express terms that the crime shall be held to have been committed in either of the counties assuming jurisdiction of the offense. It seems that this indictment would be good without the aid of § 1335, because the general rule is that the crime is committed in the jurisdiction where the mortal blow was given. 1 Bishop Crim. Procedure, 35.

TRULY, J., delivered the opinion of the court.

On the 20th day of October, 1900, in the county of Coahoma, appellant shot his wife, Ella Coleman, under circumstances not necessary to be detailed here, as the decision turns upon another point. On the 21st of October, 1900, in the county of Quitman, said Ella Coleman, as the result of such shot, died. On the 7th of March, 1901, in the county of Quitman, appellant, by the grand jury of that county, was indicted for manslaughter on account of the killing of said Ella Coleman; and as to this indictment, at the September term of the circuit court of said Quitman county, after appellant was arrested, had been arraigned, and pleaded "Not guilty," a *nolle prosequi* was entered by the district attorney, with consent of the court. On the 25th of November, 1901, appellant was by the grand jury of the county of Coahoma indicted for the murder of said Ella Coleman. The case coming on for trial at the April term of the circuit court of said Coahoma county, appellant demurred to the indictment, and, this being overruled, filed a plea in abatement,

setting up among other grounds the fact that he had once been indicted for said homicide by a court of competent jurisdiction in the county of Quitman, and by such indictment and subsequent proceedings the jurisdiction was vested in the county of Quitman, and that the entering of the *nolle prosequi* in that county, and the subsequent indictment for the same homicide in the court of another county, was, in effect, to obtain for the state a change of venue, which is not permitted by law, and that this was the real purpose and object of the dismissal of the prosecution in the county of Quitman. The demurrer of the state to this plea was sustained. During the progress of the trial appellant objected to proof of the death of Ella Coleman as having occurred in the county of Quitman, on the ground that such proof was at variance with the indictment. The indictment in question was in the statutory form, and charged that the murder occurred in the second district of Coahoma county. This objection was by the court overruled, and the trial proceeded, resulting in the conviction of the appellant, and his being sentenced to the penitentiary for life; and from that judgment he appeals, assigning numerous causes of error.

We think the demurrer to the indictment was properly overruled. The indictment was plainly and accurately drawn, and charged explicitly the commission of the offense in the second district of Coahoma county. Code 1892, § 1356.

We are of the opinion that the objection to the testimony in reference to the place of death was properly overruled. This did not constitute a variance between the proof and the indictment. It is true that in *Stoughton's Case,* 13 Smed. & M., 255, it was held that the party could only be tried for murder in the county where the death happened, but this was on account of the statute as it then existed (Poindexter's Code, p. 314, c. 56), the terms of which required that the prosecution for the murder should be in the county where the death occurred; but that case has no application here. The cases of *Riggs* v. *State,* 4 Cush. (26 Miss.), 54, and *Turner* v. *State,* 6 Cush. (28 Miss.), 686,

were decided while the same statute was in force, and accordingly it was held that the indictment must charge that the death occurred in the county where the indictment was preferred. Under the law as it then was, the indictment must have charged, and the evidence must have shown, that the death actually occurred in the county where the indictment was found. The jurisdiction of the court to try the cause was dependent upon the existence and proof of this fact. But this rule has been changed, and the difficulty avoided, by legislation. This is no relaxation of the rule requiring that the facts which constitute the offense charged must be definitely and precisely stated, and that the indictment must contain with certainty every material allegation necessary to show the commission of a complete offense within the jurisdiction of the court in which the indictment is presented. The indictment in the instant case complies with this requirement of the law. The facts constituting the crime charged, its commission within the jurisdiction vested by law in the court, and the nature and cause of the accusation against the defendant, are all averred with certainty and precision.

By § 1335, Code 1892, it is specially provided that where the "fatal blow" is struck in one county, and death occurs in another, the offender may be indicted and tried in either county. Therefore, as, by virtue of the statute, the circuit court of either county is vested with jurisdiction to try the offender, the indictment need only aver the commission of the offense within the jurisdiction of the court where the indictment is found, and it is not essential to charge in the indictment all the attendant circumstances of the homicide. The only reason for the setting out of the venue in the indictment is to show that the court is clothed with jurisdiction over the crime and its prosecution.

Under similar statutes enacted to abrogate or relax the technical rules of criminal pleading in force and adhered to under the common law, the great weight of the more modern, and, in our judgment, sounder-reasoned, authorities, assume the position that it is not necessary to aver more in the indictment than

what is sufficient to show the jurisdiction of the trial court, and advise the defendant of the nature and cause of the accusation against him with such certainty as to enable him to plead a conviction or acquittal thereunder in bar of another prosecution for the same offense. So, under our code provisions, one may be indicted for homicide in either the county where the blow was inflicted, or where the death occurred, and the entire transaction may be averred as having taken place in the county where the indictment is found; and such an indictment will be sustained by proof that either the act was committed, or its effect occurred, in such county. McClain, Criminal Law, § 370; *Johnson* v. *State,* 47 Miss., 674; *State* v. *Jones,* 38 La. Ann., 792; *Hicks* v. *Territory* (N. M.), 30 Pac., 872.

The demurrer to the plea in abatement should have been overruled. Section 1334, Code 1892, was designed to meet just such a contingency as arose in the instant case. Under the common law, as construed in the *Stoughton Case,* before cited, where a homicide was committed partly in one jurisdiction and partly in another, it was doubtful whether the offender could be prosecuted in either, but this is not true as the law now exists. Section 1334 provides that where an offense is committed partly in one county and partly in another, or where the acts, effects, means, or agency occur in whole or in part in different counties, the jurisdiction shall be in either county where the offense was commenced, prosecuted, or consummated, "where prosecution shall be first begun." That provision controls the case at bar. The state can begin its prosecution in any of the counties in which any of the criminal agencies operate—anywhere that any act is committed in prosecution of the criminal design—but, having chosen the tribunal before which the party accused shall stand trial, it cannot, of its own motion, divest that court of jurisdiction, and begin another prosecution before another court in another jurisdiction. Under the ancient law, under the facts disclosed by this record, the party accused could have been prosecuted in neither jurisdiction. Under existing statutes, he can

be prosecuted in either, but it is not the law that he can be prosecuted in both. Therefore, the prosecution in the instant case having been first begun in the circuit court of Quitman county, the state could not divest that court of its jurisdiction, and rightfully institute another prosecution in a different county. By the terms of the statute, concurrent jurisdiction was vested in the circuit courts of both counties, and the one first attaching becomes exclusive. The trial could not, on the application of the state, have been transferred to any other county, because this is not permissible by law, and the method here adopted is simply an attempt to do by indirection what cannot be done directly. *State* v. *Pauley,* 12 Wis., 537; *Ex parte Baldwin,* 69 Iowa, 502, 29 N. W., 428; *State* v. *Chinault,* 55 Kan., 326, 40 Pac. 662; *State* v. *Brannon* (Kan. App.), 50 Pac. 986; *State* v. *Williford,* 91 N. C., 529. That § 1334 applies to the case made by this record is indisputable. Here the act was committed in one county, and the effect produced in another. The crime was wholly completed in neither county, but partly in each. The mere striking of a blow is not murder. Its fatal effect must follow, to make the completed crime. To constitute murder, several essential facts must exist—among them the criminal act and its fatal effect—and these may often occur in different jurisdictions. *Com.* v. *Parker,* 2 Pick., 550; *State* v. *Pauley, supra; Robbins* v. *State,* 8 Ohio St., 131; *Archer* v. *State,* 106 Ind., 426, 7 N. E., 225; *Ex parte McNeely* (W. Va.), 14 S. E., 436, 15 L. R. A., 226, 32 Am. St. Rep., 831; *State v. Jones, supra.* Section 1334 providing that in all criminal cases, when the courts of different counties have concurrent jurisdiction, jurisdiction shall vest in the courts of that county "where prosecution shall be first begun," is simply declaratory of a well-defined and firmly established legal doctrine. It grew out of the comity of nations, and was intended to prevent conflicts between courts of concurrent jurisdiction, whether of the same or different counties or countries, and was found necessary to insure the orderly administration of the criminal laws.

But it is more than a mere rule of procedure. It is a substantial and valuable right guaranteed by the law to a party accused of crime. It insures that he shall not twice be placed in jeopardy for the same offense; that he shall be forced to undergo but one trial, and shall not be harassed by repeated indictments in different courts and different jurisdictions. In *Ex parte Baldwin, supra*—a case of murder, where the criminal agency was placed in motion in one county, and its fatal effect occurred in another—the supreme court of Iowa says: "Jurisdiction of the crime for which defendant is indicted rests in either Van Buren or Jefferson county. Code, § 4159. It is plain that the courts of both counties cannot exercise jurisdiction by trials and judgments in the case, for the obvious reason that, if they may, defendant may be subjected to two trials and two punishments for the same offense. How shall it be determined in which county trial and punishment shall be had? The answer is ready and simple, and discloses a rule which, while securing the punishment of criminals, will assure the accused exemption from two trials and double punishment. It is this: The court first obtaining jurisdiction of the person of the accused shall retain it, to the exclusion of the court of the other county, and shall proceed to try the case and administer justice therein. The necessity for the administration of the law on criminal matters without subjecting the accused to the peril of two trials, with the possible result of being twice convicted and punished, demands the recognition of the rule. It is in accord with the familiar rule prevailing everywhere, that, where courts have concurrent jurisdiction, the court whose jurisdiction first attaches must retain the case for final disposition. Authorities need not be cited to support this familiar elementary rule. But few cases are or can be cited announcing the rule, doubtless for the reason that it is rarely, if ever, disputed or doubted." The fact that in the instant case there is no contest between the courts of the counties of Coahoma and Quitman does not operate to vary the rule, or to deprive the appellant of

his right to be proceeded against only by due course of law, and in the jurisdiction where the prosecution was first instituted. Any other rule would be attended with great inconvenience and possible hardship to the party accused of crime; and would create uncertainty and confusion in the administration of the law. The officers of law cannot begin in one county a prosecution for an offense alleged to have been partly committed therein, and then, at their pleasure, dismissing that, commence another prosecution in another county, and so harass the accused by indictment and prosecution in every court vested by law with jurisdiction of the alleged offense. Such was not the intention of the law, and such a practice cannot be countenanced or permitted. The circuit court of Quitman county, having first acquired jurisdiction of the crime with which the appellant stands charged, must maintain it throughout. The entering of the *nolle prosequi* in that court does not prevent the grand jury of that county, if it so chooses, from now presenting an indictment against appellant, charging him with murder in slaying of Ella Coleman.

The judgment is reversed, and the indictment and prosecution in Coahoma county quashed and abated.

We do not consider or decide the other assignments, as they may not arise, should there be another trial of this matter.

*Reversed and remanded.*