George B. PARR, Appellant,

v.

UNITED STATES of America, Appellee.

No. 15612.

United States Court of Appeals Fifth Circuit.

July 22, 1955.

Certiorari Granted Oct. 17, 1955.
See 76 S.Ct. 106.

See also, 17 F.R.D. 512.

Everett L. Looney, Austin, Tex., Marvin K. Collie, Clyde L. Wilson, Jr., Houston, Tex., Thomas E. James, Austin, Tex., for appellant.

Malcolm R. Wilkey, U. S. Atty., James T. Dowd, Asst. U. S. Atty., Houston, Tex., Russell B. Wine, U. S. Atty., W. D. Texas, San Antonio, Tex., for appellee.

Before HUTCHESON, Chief Judge, CAMERON, Circuit Judge, and DAWKINS, District Judge.

HUTCHESON, Chief Judge.

This appeal is from an order dismissing, on motion of the United States, an indictment in three counts returned against the defendant below, appellant here, in the Corpus Christi Division of the Southern District of Texas, and charging him within such division and district with preparing and causing to be prepared false and fraudulent income tax returns for the years 1950, 1951, and 1952, and filing them with the Collector of Internal Revenue for the First Internal Revenue Collection District of Texas, by depositing and causing them to be deposited at the Corpus Christi Division Office. Giving notice of appeal from the order, defendant is here attacking it as erroneous and seeking its reversal.

The United States, proceeding under Rule 39(a), Federal Rules of Criminal Procedure, 18 U.S.C.A., "Supervision of Appeal * * * in Appellate Court",[1] has filed a motion to dismiss the appeal on three grounds,[2] and the matter is before us on the motion to dismiss.

Supporting its motion by brief and argument and the citation of many authorities,[3] the United States urges upon us that the only kind of order having the requisite finality to support an appeal in a criminal case is one imposing a sentence and leaving nothing to be done but to enforce by execution what has been determined, and that the order in question determined nothing as to defendant's guilt or innocence. So urging, it insists: that whatever may be the merits of appellant's contentions as to the correctness or incorrectness of the judge's action in entering the order, those contentions are not, they cannot be, for decision here; and that, since the dismissal of the indictment deter-

---

1. Cf. Semel v. United States, 5 Cir., 158 F.2d 229.

2. These are: (1) that the order of dismissal is not appealable because not a final decision in a criminal case within the meaning of 28 U.S.C. § 1291; (2) because, as the record shows, the defendant has been indicted in the Western District of Texas, and it is the intention of the government to prosecute that indictment to a final decision there; and (3) because the appeal is frivolous and obviously without merit, and is taken for the purpose of delay.

3. Particularly Berman v. U. S., 302 U.S. 211, 58 S.Ct. 164, 82 L.Ed. 204; Cobbledick v. U. S., 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783; U. S. v. Swidler, 3 Cir., 207 F.2d 47; Lewis v. U. S., 216 U.S. 611, 30 S.Ct. 438, 54 L.Ed. 637; Heike v. U. S., 217 U.S. 423, 30 S.Ct. 539, 54 L.Ed. 821; McLish v. Roff, 141 U.S. 661, 12 S.Ct. 118, 35 L.Ed. 893; Ex parte Altman, D.C., 34 F.Supp. 106; and U. S. v. Doe, D.C., 101 F.Supp. 609.

mined nothing except that it would be no longer prosecuted, the determination by us of defendant's contentions must await the entry of, and the appeal from, a final judgment.

On his part, the appellant, realizing that an ordinary dismissal on the motion of the United States of a pending indictment is not a final judgment from which an appeal will lie, is here insisting that the order appealed from is not such an order, and this appeal is not such an appeal. So insisting, he thus states his case:

"It is the position of the accused that (1) the dismissal was filed during the trial without his consent, contrary to the provisions of Rule 48(a) Rules of Criminal Procedure, and (2) the order transferring the case from the Corpus Christi Division to the Laredo Division, Southern District of Texas, pursuant to Rule 21(a) R.C.P., was res judicata of venue and effectively lodged exclusive jurisdiction of the offenses charged by the indictment against accused in the Laredo Division, Southern District of Texas. For these and other reasons stated below, the accused urges that the judgment of dismissal filed May 20, 1955, from which this appeal is prosecuted is an erroneous final decision of the District Court of the United States for the Southern District of Texas, Laredo Division, within the meaning of 28 U.S.C., Section 1291."

In support of his position, as thus stated, appellant cites no federal decision, there is none, holding that an order dismissing an indictment is appealable, none supporting his claim that under federal jurisprudence the order in this case was a final and appealable order. Instead he cites cases dealing with non suits entered in civil cases such as Cybur Lumber Co. v. Erkhart, 5 Cir., 247 F. 284; Massachusetts Fire & Marine Ins. Co. v. Schmick, 8 Cir., 58 F.2d 130; Cf. Marks v. Leo Feist, Inc., 2 Cir., 8 F.2d 460; Ruff v. Gay, 5 Cir., 67 F.2d 684;

Weeks v. Fidelity & Casualty Co., 5 Cir., 218 F.2d 503; and Vaughan v. City Bank & Trust Co., 5 Cir., 218 F.2d 802.

He further urges that the order, entered on defendant's motion, transferring the case from the Corpus Christi to the Laredo Division for trial was res judicata as to the jurisdiction and venue of the prosecution of the defendant for the identical offense charged in the indictment in this case; that the court, therefore, was without authority to dismiss the case under Rule 48(a) Federal Rules of Criminal Procedure, 18 U.S.C.; that under the circumstances the only order of dismissal authorized is with prejudice forever terminating the prosecution of defendant for the offense charged; and that thus the order sought to be appealed from is invested with finality. He, however, cites no federal cases in support of this view. Instead he relies entirely upon decisions of state courts controlled by particular statutes or particular principles or theories of jurisprudence. Basic among them is the case of Coleman v. State, 83 Miss. 290, 35 So. 937, 64 L.R.A. 807, a Mississippi decision holding that *under a statute providing in effect that where an offense is committed in one or more counties that county where the offense was commenced, prosecuted or consummated, where prosecution shall be first begun*, shall have exclusive jurisdiction of the cause, the state could not, after having begun the prosecution in one county, dismiss the indictment and file it in another county. He also cites several civil cases from Texas, one of them holding that under certain conditions interlocutory orders, though not appealable for want of finality, may be complained of on an appeal from a final judgment in the cause, Coke v. Pottorff, Tex.Civ.App., 140 S.W. 2d 586, and others that, under Texas Rules of Civil Procedure expressly so providing, appeals will lie from certain interlocutory orders.

As his final position, appellant, disputing appellee's claim that the appeal is frivolous, asserts that his claim of prejudice from the dismissal order is meritor-

ious in that if the orders transferring the cause to the Laredo Division and then dismissing the indictment, did not constitute former jeopardy so as to prevent further prosecution, the order of transfer was a holding that he could be prosecuted only in that division and in legal effect prevents his being prosecuted in the Western District of Texas, or anywhere except in the Laredo Division of the Southern District.

Interpreting these contentions and arguments in terms of legal theory, they seem to be: that when, after lengthy hearings, Judge Kennerly granted defendant's motion to transfer the case to Laredo, his ruling was a final and irrevocable adjudication that jurisdiction of the offense of defrauding the revenue was thereby exclusively vested in the Laredo Division of the Southern District of Texas; that it created in the defendant a vested right to be tried there, and there alone; and that, when the government presented the facts to a grand jury and obtained an indictment in the Western District of Texas, and then, as appellant claims, erroneously procured a dismissal of the indictment earlier obtained in the Southern District, it in effect induced the court to enter an order depriving defendant of that right, and thus the order appealed from was invested with finality and was and became a final judgment. Thus, as it seems to us, presenting his position at once on the motion to dismiss and on the merits of the appeal and analogizing the dismissal of the indictment over his objection to a non suit in a civil case over the objection and to the prejudice of the defendant, the defendant argues quite contradictorily: (1) that this deprivation furnishes the element which at once invests the order with finality sufficient to make it appealable and requires its reversal; and (2) that if it stands unreversed, it has the effect of entitling him to an acquittal altogether.

We pass, without consideration or discussion of them, appellant's views on the merits, because, unless the order is final and we think it is not, the merits are not before us, to take up and dispose of the only matter now before us, the finality *vel non* of the order here sought to be appealed from.

█ We think it clear that none of defendant's claims that it is final are well taken, as bearing upon the finality of the order for the purpose of appeal. All that occurred in this case and the sole purport and effect of the order sought to be appealed from is simply that the United States has elected to discontinue, and has discontinued, the prosecution of the indictment returned in the Southern District of Texas, and that the order sought to be appealed from is therefore not final but discretionary and interlocutory and not appealable. Semel v. United States, 158 F.2d 231, and authorities cited in note 3, supra. These, though not on all fours on their facts, do give insight into the problem of "finality" presented here. They, together with Swift (Swift & Co. Packers v. Compania Colombiana Del. Caribe, S. A.), 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206 and Cohen (Cohen v. Beneficial Industrial Loan Corp.), 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528, indicate the general and consistent approach that an order is "final" only if it terminates the matter in controversy below. When a seemingly interlocutory order has been held appealable, it has been on the theory that irreparable injury will result from dismissal of the appeal or that the particular narrow issue with which the order was concerned is wholly separable from the remainder of the case and the order terminates the separable issue.

█ The matter put in controversy by the dismissed indictment was the defendant's guilt of the crime of tax evasion charged in it. That issue was never reached for determination, let alone determined, and under the controlling authorities cited, supra, the appeal must, therefore, be and it is hereby dismissed for want of finality in the order appealed from.

From these views that the order appealed from was not a final order and the

court is without jurisdiction of this appeal to be followed by an order dismissing it, completely inconsistent as they are with the theory of protecting and preserving this court's jurisdiction, on which appellant's motion was filed in this cause, it follows that the motion for leave to file petition for writs of mandamus and prohibition must be, and it is, denied.

CAMERON, Circuit Judge (dissenting).

I.

In its opinion granting motion of appellant Parr to change the venue of the first indictment from the Corpus Christi Division, where it was brought, to the Laredo Division of the Southern District of Texas, the District Court said in part:

" * * * substantially all of the persons who made such affidavits mention or refer to the publication of many articles about defendant in two newspapers published at Corpus Christi with large circulations in the Corpus Christi Division. Defendant has brought and offered in evidence clippings, etc. of a very large number of these articles or publications, extending over a period of several years and on down, which I have studied. * * * [Later the Court estimated the number as between five and six hundred.] It is sufficient to say that the defendant has therein been given, during recent years, much publicity, unfavorable and sometimes most unfavorable. Such publications, generally with prominent headlines, are directly or indirectly with respect to defendant * * * and concern political matters, elections, law enforcement, taxation, etc., generally and in the town of San Diego and in Duval County, where defendant resides, and in some adjoining counties. They are also with respect to the killing at night of a young man at Alice, Texas, in connection with which defendant and persons associated * * * are mentioned. Also with respect to the stationing of Texas Rangers in Duval County, the investigation by the Attorney General of Texas * * *. Also with respect to the impeachment of certain judicial and other officers thereof. Also with respect to many lawsuits filed on behalf of the State of Texas and the United States against defendant * * *.

"These publications whether standing alone or when considered in connection with such affidavits, support, strengthen and confirm my view that there is so great a prejudice against defendant in the Corpus Christi Division that he cannot obtain a fair and impartial trial there in this case."

It was in a jurisdiction pervaded by that atmosphere that the Government initiated this prosecution. In so doing, the Government's attorney asserted that a precedent, observed for twenty years, of bringing such prosecutions at Austin, was broken. Having the right to prosecute at several other points, it chose as the battleground upon which appellant's liberty would be decided a community in which the Government would have had all of the advantage and the appellant [1] would have had a hard uphill fight.

When the motion for change of venue was made the Government opposed the change and offered many affidavits in opposition to it. After an extended hearing in which the parties filed elaborate written briefs, the District Judge granted a change of venue based upon the conditions found by it to exist where the prosecution was brought.

In commenting upon the transfer to the Laredo Division the District Court mentioned that the Government "did not,

---

[1] The matter is before us on appeal from order dismissing the first indictment and also on Petition for Mandamus and Prohibition and Motion to file same. Parr will be referred to in every instance only as appellant.

when the case was first submitted, claim that it could not obtain a fair and impartial trial at the Laredo Division, nor does it do so now. It says in its brief * * *, 'that the Government would be under a severe handicap in prosecuting this defendant in the Laredo Division'." The District Court then proceeded to describe certain political controversies as existing in the Laredo Division, appellant being in one political camp and some of the prosecuting witnesses being in the other. Having considered the showing fully, the District Court concluded, "I do not think that the evidence shows that the Government either will or might be under a severe handicap in the prosecution of this case as claimed. I find to the contrary". The carefully drawn opinion was written by retired District Judge Kennerly and concurred in by active Judge Allred.

That opinion was filed April 28, 1955 and five days later, May 3rd, the United States Attorney called the District Judge over long distance telephone advising that the Government desired to dismiss the first indictment because a new indictment had been returned in the Western District of Texas. He stated to the judge that he did not believe that the defendant could be heard on the matter under Rule 48. The regular District Judge ruled otherwise, however, and set the motion to dismiss for hearing before Judge Kennerly.

The motion to dismiss the first indictment was filed May 4, 1955 and with it was filed a copy of the new indictment returned in the Western District involving the same facts. With it also was filed a written statement of reasons for the dismissal. The chief reason given was that the Government had chosen to present the new indictment in the Western District and that it had a right so to do, adding that new factors had been introduced in the situation: "Among the recent factors weighing in the overall appraisal of where prosecution should be had should be mentioned the recent decision of the court to transfer venue from Corpus Christi to Laredo in the Southern District of Texas. This means that trial will be had in a division in which neither the taxpayer lives nor the Government chose originally to bring prosecution, and thus establishes a set of circumstances which was never in the contemplation of Government counsel at the time the original prosecution was brought in the Southern District of Texas."

The District Court for the Southern District conducted an extensive hearing on the Government's motion to dismiss the first indictment in which it heard an extended statement by the Government counsel and a like statement by one of appellant's counsel, and the Government counsel was subjected to a short examination by appellant's counsel.

From the statement of Government counsel and the testimony given by him, the chief articulated reason for the motion to dismiss the Corpus Christi indictment was that the Government did not feel that the witnesses for the Government would stand up as well in the Laredo Division as they would elsewhere. In his testimony, the attorney adverted to the fact that it was easier to make proof of venue in the Austin Division (Western District), but his answers, on the whole, failed to sustain that contention. Here is an answer given by the attorney which may be taken as epitomizing the underlying reason for the Government's opposition to trying the case in the Laredo Division:

"* * * the very fact that the case in the Southern District has now been transferred to Laredo and the fact that testimony will have to be elicited from witnesses who are either reluctant or hostile makes— throws a different light on the Government's proof of venue, as it does on the Government's proof of other aspects of the case. I point out to you in that regard that Mr. Benson here, who was in the employ of Mr. Parr and signed the tax returns, was an employee of Mr. Parr and he has lived down in that area. Not going further into the case, but the

change in the location affects the proof as to venue as it does the other facts of the Government's case.

\* \* \*

"As far as the basic facts are, we believe them to [be] the same; as far as the practical problem of proof in a lawsuit, the scene has been altered, the situation has been altered considerably by the shifting of the case from Corpus Christi to Laredo."

At another point in his testimony Government counsel thus summarized the attitude that the Government had the plain right to shift the scene of the trial and was merely exerting that right:

"I think it has been very clear from several documents we have filed that we would have preferred the case to remain in Corpus Christi, and it is certainly clear from the action of the Attorney General and myself that the Attorney General prefers that the case go to Austin, and believes, in the exercise of his office as the chief prosecutor, it ought to be prosecuted there in Austin."

The Judge for the Southern District made it clear in his brief opinion what influenced him to grant the motion to dismiss:

"Now we come to this motion by the Government to dismiss the case because of the fact that a new indictment covering the same matter has been presented in the Western District \* \* \* Evidently there is some discretion in the court as to the matter of whether the case should or should not be dismissed.

"In twenty-four years on the bench in this district, I do not recall ever having at any time hesitated to dismiss a case when requested by the Government. That was, of course, under the old law, and [2] under the present rules. If I have a discretion under the rules now as to whether this case should or should not be dismissed, I must exercise that discretion and allow it to be dismissed, because I do not think that the defendant, either in the hearing this morning or in this enormous record on the question of change of venue, has shown any reason why the case should not be dismissed \* \* \* I am going to dismiss this case as requested by the Government."

Appellant prosecuted an appeal from the judgment entered dismissing the former indictment, and briefs have been filed and that case stands on our docket for decision in due course.

Thereafter on May 31, 1955 the Government called up criminal case 3866 in the Austin Division of the Western District of Texas, the new indictment, and appellant filed a motion to stay proceedings therein until the appeal could be disposed of. That motion was overruled and appellant filed a motion to transfer the second indictment to the Laredo Division of the Southern District for trial, which was likewise overruled. The District Court for the Western District of Texas thereupon set the new indictment for trial July 18, 1955. Immediately thereafter appellant filed in this court a Petition for Mandamus and Prohibition together with motion for leave to file the same, and the Government has filed its opposition thereto along with a motion to dismiss the appeal.

### II.

I think leave should be granted that the Petition for Mandamus and Prohibition be filed and that an order should be entered at least holding these complex proceedings in *status quo* until the appeal may be heard in due course, and the proceedings can be carried on in an orderly fashion preserving the rights of the appellant and the Government alike. The majority holds that the appellant is entitled to no relief at all, based chiefly upon the ground that it is conceived that appeal does not lie from the order dis-

---

2. It is evident that the transcript omits the word not at this point.

missing the first indictment. I think that the appealability of that order presents a serious question. Under the recent decisions of the Supreme Court in Swift & Packers Co. v. Compania, etc., 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206, and Cohen v. Beneficial, etc., Co., 337 U. S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528, and our decision in Tomlinson v. Poller, 5 Cir., 220 F.2d 308, there is a probability that appeal does lie from this order. But I see no reason to decide this question now. The Government has offered no explanation at all for its great haste in bringing its indictment returned in May to trial at once. The events forming the basis of the prosecution occurred between four and six years ago. There is no reason why the appeal should not be heard in due course by this court, having the benefit of oral argument of counsel and leisurely study of the briefs.

### III.

But we have ample power to deal fully with this situation even if that order is not appealable and there is precise precedent for such a course. In Atlantic Coast Line R. Co. v. Davis,[3] we sustained Mandamus and Prohibition as proper means for arresting proceedings in order that justice might be done with respect to a non-appealable order. We gave as a reason, 185 F.2d 768, for allowing the extraordinary writ that the situation was of such a nature as "renders the likelihood of any fair and effective correction of the action of the Court by subsequent appeal * * * highly improbable, if not impossible". [Citing cases.] The same is true here as regards the probability of correcting, after possible conviction on the second indictment, any error which may have been made in permitting dismissal of the first indictment. And we noted further that

the allowance of the writ was in "aid and maintenance and protection of this Court's appellate jurisdiction." A District Court in Florida had entered an order under 28 U.S.C.A. § 1404(a) transferring a civil action to another district for trial. Appeal does not lie from such an order.[4] Nevertheless we allowed Petition for Mandamus and Prohibition to be filed and ordered the District Court to vacate the transfer order and to proceed with the trial of the case. If the facts justify it, we can grant full and appropriate relief here.

I think the facts do justify it. I would not state my reasons for dissent if I did not feel that this record presents an important question of procedure whose protection appellant is entitled to invoke and whose definition the bench and bar are entitled to have. It is the duty of the courts to hold the scales of justice in equal balance between the Government and a citizen charged with crime in exactly the same manner as those scales are held in litigation between two private individuals.

An instinctive feeling of doubt arises whether these proceedings would be attended with the same results if they were between two private litigants. Suppose private litigant A had sued private litigant B in a civil action and had chosen to lay the venue in the Corpus Christi Division. B came along and filed a motion to transfer to the Laredo Division under 28 U.S.C.A. § 1404(a). After an extended hearing and over the opposition of A, an order was entered transferring the case to the Laredo Division.[5] Without waiting for a week to pass, litigant A sought out another forum and there served the same complaint on litigant B proceeding back to the original jurisdiction with the request

---

**3.** 5 Cir., 1950, 185 F.2d 766, Petition for leave to file mandamus, etc., denied by Sup.Ct., De Vane v. United States Court of Appeals for Fifth Circuit, 340 U.S. 941, 71 S.Ct. 502, 95 L.Ed. 679, and the cases cited; and see 28 U.S.C.A. § 1651 (a) and the additional cases collected in the article cited in Note 6 infra.

**4.** Crummer Co. v. duPont, 5 Cir., 1952, 196 F.2d 468.

**5.** Of course, the case here is stronger for appellant. The transfer here was from a point where prejudice palpably existed in favor of one litigant to a point where prejudice did not exist for or against either litigant.

that the original civil action be dismissed solely on the ground that A did not feel that his witnesses would stand up as well in the jurisdiction to which the transfer had been made. It is not hard to visualize the effectiveness with which counsel could declaim that the processes of the courts were being trifled with to harass litigant B.

With respect to civil litigation, it has been said that, prior to the passage of 28 U.S.C.A. § 1404(a), venue was the "prime prerogative of plaintiffs".[6] It was pointed out that this Act of Congress had transferred some of that prerogative to the defendant and a large portion of that prerogative to the court, to be used by the court in deciding questions of venue on the basis of fairness to both parties. It was further pointed out that the courts have almost universally exercised that prerogative to see to it that the rights of both the parties are protected without advantage to either.

Does not Rule 48(a) have a similar effect with respect to criminal prosecutions? Are we to assume, as the court below manifestly assumed, that venue is still the prime prerogative of prosecutors to be used in a situation like this one to gain an advantage for the Government or to escape from a position of less advantage in which the Government found itself as the result of its own election?

I do not think so. Prior to the adoption of the new rule, the Government had had a free hand and had used it freely. The court below stated in its opinion that in more than twenty years it had never refused the Government in its request for dismissal and it is reasonably clear that this unbroken practice was decisive in its mind.[7] If that is still the law, the innovation in the Rules of Criminal Procedure requiring an order of court before an indictment could be dismissed would be meaningless and without purpose.[8] The manifest basis for the change in procedure was that the Supreme Court, with Congressional approval, was doing with respect to criminal prosecutions, what Congress had done with respect to civil actions: it was taking the choice of venue out of the unfettered hands of the litigants and giving it to the courts to be exercised in a way which would insure justice and equal treatment to all parties.[9]

---

6. "Forum Non Conveniens and 28 U.S.C.A. § 1404(a)", 23 Miss.Law Journal p. 1 (December, 1951).

7. Besides indicating its feeling that the Government still had, under Rule 48, practically an absolute right to dismiss, the Court indicated further that, in the hearing of such a motion the defendant had the burden of proving that the indictment should not be dismissed. Both assumptions represent misconceptions of the law. The Government, seeking affirmative action by the Court, carried the burden of showing that there was some valid legal reason for the dismissal.

8. The Notes of the Advisory Committee, 18 U.S.C.A. pp. 537–8, contain this comment:

"The first sentence of this rule will change existing law. The common-law rule that the public prosecutor may enter a nolle prosequi in his discretion, without any action by the court, prevails in the Federal courts * * *. This provision will permit the filing of a nolle prosequi only by leave of court. This is similar to the rule now prevailing in many States. * * *"

The Advisory Committee had recommended that the right to dismiss be left with Government attorneys with the requirement that written reasons be given. But the Supreme Court rejected that recommendation and inserted the requirement for court approval.

Even before the passage of this rule, one District Court had held that the Court had the power, in the exercise of a judicial discretion, to refuse a requested dismissal, U. S. v. Krakowitz, D.C.Ohio, 1943, 52 F.Supp. 774.

9. Few cases are cited by counsel and they are not of much help. Two federal cases are brought to our attention, United States v. Haupt, 7 Cir., 152 F.2d 771, and United States v. Jones, 7 Alaska 378, and both speak in condemnatory terms of the practice of multiple indictments. The practice of dismissing an indictment in order to proceed under a new one in a more favorable climate is condemned in several state court cases, notably Ex

If that was the purpose and if that is the meaning of the rule, then there is grave doubt whether that purpose and that meaning have been vindicated here. There is no way the Government can escape the conclusion that its actions here were taken in an effort to select a forum in a locale where the atmosphere would be favorable to the Government and not to the defendant.[10] No criticism is directed to such a course. Litigants from time immemorial have jockeyed for positions of advantage and have shopped about in an effort to light upon the most favorable venue situation for their own success. But courts have to be blind to such machinations. They must weigh the facts of the case before them and give judgment based upon the rights of the parties contending as equals and upon a battleground which favors neither.

The Government made its selection of the battleground in the first instance as it had a right to do. The court found that battleground to be too favorable to the Government and unfair to, the defendant. The court changed the battleground to one it adjudicated to be favorable to neither side.[11] To permit the Government, under those circumstances, to repudiate the whole proceeding it had initiated and to move the scene of the fight to another place of its own selection is to open the door to the possibility of grave abuses. Further, such a course would deny appellant rights which he is entitled to have the courts protect.

If it be thought that the views here expressed give hospitality to the concept that the Government does not belong in a favored-litigant class, they are so intended. The mass of litigation, both civil and criminal, to which the Government is party is sufficient to cause the courts increasingly to give most careful scrutiny to the status of the Government as a litigant. In the very nature of things, the Government enters every contest with a citizen with a distinct advantage.[12] Moreover, all who have not

parte, Lancaster, 1921, 206 Ala. 60, 89 So. 721, 18 A.L.R. 706; State v. Milano, 1916, 138 La. 989, 71 So. 131, and Coleman v. State, 83 Miss. 290, 1904, 35 So. 937, 64 L.R.A. 807.

10. The Government's attorney had said this, in stating to the District Court the reasons the Government desired the order of dismissal: "These witnesses, in most instances, are reluctant, and in some instances are hostile. We feel that the trial of the case in Laredo, close to the defendant's seat of political power and his associations there, would have an adverse effect on eliciting the truth from the witnesses the Government will be forced to bring in order to establish this case. * * *."

The Atlas shows that Laredo is in Webb County and San Diego is in the adjoining County of Duval, and that the two Cities are rather close together. It further shows that Austin is more than one hundred miles away from San Diego. Students of the problem of law enforcement largely agree that government functions at its best at the local level, and that prosecutions are likely to bring more just results when they are conducted where the defendant and the witnesses are known and where the difficult ques-

tion of law enforcement has its most direct impact. The vast majority of criminal prosecutions are conducted in such an atmosphere. Jurors who have no acquaintance with the defendant or the witnesses and who do not have a knowledge of all of the facts and circumstances surrounding the problem of the enforcement of the law—such as would inevitably be the case in a district so far removed from the site of the happenings forming the basis of the prosecution—are at a great disadvantage.

In passing on the Government's contentions that it would be under a disadvantage in a trial at Laredo, which it had presented fully on the motion for change of venue, the District Court had ruled directly that the Government would not be under a disadvantage there.

11. It is true that the battleground was the choice of the defendant but the Court found that the rights of the Government would not be prejudiced in the Laredo Division.

12. This thesis was well developed by a paper entitled "The United States as a Litigant" read May 30, 1952 to the Judicial Conference for the Fifth Circuit, and a part of the records of that Conference, by Hon. Robert B. Trout-

been blind must know that it has frequently been treated as a favored litigant. That is not as it should be. When the Government enters litigation with its citizens, it must stand as an equal and must toe the same mark private litigants must come to. It is hard to conceive that a private litigant could make a test run in one jurisdiction and fail, and then start a proceeding in another jurisdiction and get his action to trial on the merits with such speed while, at the same time, the former action was pending and undisposed of, or was improperly dismissed.

## IV.

The Government takes the position that appellant has no stake in the continued pendency of the prosecution first brought. That position is untenable. If it should be held that the motion to dismiss that indictment should have been overruled, the parties litigant will have two cases pending in separate jurisdictions and involving the same subject matter. The respective courts called upon to deal justly as between the parties will exercise their respective discretions, having due regard for the dictates of justice as well as for the comity usually observed in such matters.[13] We so held in Illinois Central R. Co. v. Bullock, 5 Cir., 1950, 181 F.2d 851. The Government argues that, under Carpenter v. Edmonson, 5 Cir., 1937, 92 F.2d 895, the District Court for the Western District of Texas would have no discretion but to proceed to hear the case it elected to press. That argument too is unsound The Carpenter doctrine was considerably weakened by McLain v. Lance, 5 Cir., 1944, 146 F.2d 341, and was repudiated in the Bullock case, supra. The law now is that each judge called upon to try a case pending also in another jurisdiction has the right and duty to exercise a judicial discretion as to whether the case will be tried or not.

If that situation should come to pass, it would be incumbent upon the District Court for the Southern District of Texas, and the District Court for the Western District of Texas each to exercise discretion as to which case should be tried. It may be that discretion so exercised would lead to the conclusion that the cases should be disposed of in the order of their filing. That would not be inconsonant with practices frequently observed.[14] The two courts would, of course, exercise discretion according to their own judgments. The suggestion is made merely to indicate that the Government's argument is wrong and that appellant does have a definite legal interest in the continued pendency of the first prosecution.

man of Atlanta, Georgia. Here is an excerpt from that paper:

"With this vast power, and these tremendous resources, the United States is, indeed a formidable adversary * * The ordinary citizen stands in awe when confronted with such litigation. * * * It is a Goliath, a giant in power, whose challenge a modern Saul and all his Captains might with good reason hesitate to accept. More often than not, however, the citizen has no choice. The initiative is on the side of the Government.

"The odds apparently are uneven. * * He is assured, however, that the end and aim of his Government is the protection of his freedom and his 'rights'. In an even broader sense, justice to the individual is its aim. History tells him that those 'rights' were established by litigants with the courage to combat tyrants who sought to deny them, before judges who had the courage to uphold them. In such contests our profession has supplied both the adversary advocates and the judges. The latter have been set apart and charged with responsibility of seeing that justice be done to the individual and to the Government. * * * The seal of the Department of Justice to which they belong contains a motto, '*Qui pro Domina Justitia Sequitur*'. It appears on the flag which flies over the Department's office. Liberally translated, 'The Department of Justice Prosecutes in Behalf Of Our Lady Justice'."

13. Cf. Lydick v. Fischer, 5 Cir., 1943, 135 F.2d 983.

14. Cf. Niehaus v. Magnolia Textiles, 5 Cir., 1949, 175 F.2d 977, and the companion case, Magnolia Textiles, Inc., v. Gillis, 1949, 206 Miss. 797; 41 So.2d 6.

## V.

It is plain that we have all elements of this controversy before us and are able to do full justice to the parties independently of the question of the appealability of the dismissal order. It is clear that the Court of the Southern District applied the wrong tests in deciding that the indictment first brought might be dismissed. If it had required the Government to establish a sound legal reason for the dismissal, giving due consideration to the rights of both parties, it is difficult to conclude that the right to dismiss would have been sustained, so barren is the record of any such showing. When all of the talk is boiled down, it points to the fact that the Government was wholly displeased with the prospect of a trial in a venue the court had adjudicated to be fair.

That judgment transferring the case to the Laredo Division had been reached after full hearing and at manifestly great expense to the Government and appellant. To permit the Government to turn its back upon the entire proceeding conducted in a venue of its own selection, giving it, at the same time, a second choice of venue, and to put the appellant to trial with the added expense which would obviously be entailed, would, under the facts clearly appearing in the record before us, be unjust and in derogation of appellant's rights.

The authorities discussed in III supra furnish a clear blue print of means by which we may do full justice between the parties. I think we should permit the Petition for Mandamus and Prohibition to be filed, and should take full charge of the entire litigation, either (a) preserving the *status quo* while proceeding to hear the appeal on its merits; or (b) reversing the dismissal order for rehearing by the Court of the Southern District guided by proper standards of proof and decision; or (c) ordering that the case in the Western District be transferred to the Southern District and consolidated with the case originated there, and that trial proceed in the Laredo Division. By following one of these alternatives, or a combination of them, we can proceed to grant appellant the protection to which I think he is entitled and can dispense justice which will be effective and not sterile.

These are the grounds of my dissent.