## UNITED STATES v. PARDUE et al.

(District Court, S. D. Texas, at Houston. December 31, 1923.)

Criminal law ⚌42—Immunity because of testimony before Trade Commission.

In view of Federal Trade Commission Act Sept. 26, 1914, § 10 (Comp. St. § 8836j), making it a criminal offense to refuse to attend and testify before the commission, the provision of section 9 (Comp. St. § 8836i) that "no natural person shall be prosecuted * * * for or on account of any transaction, matter or thing concerning which he may testify or produce evidence * * * before the commission in obedience to a subpœna issued by it," must be construed in accordance with its plain language, and if a witness appear in obedience to a subpœna and is placed on the stand by the government, the fact of compulsion is prima facie established, and to entitle him to the immunity expressly given it is not necessary that he should claim it before the commission.

⚌For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Criminal prosecution by the United States against Oscar L. Pardue and others. On demurrer to plea in bar by defendant J. A. Chaffe. Demurrer overruled.

H. M. Holden, U. S. Dist. Atty., and George E. B. Peddy, Sp. Asst. U. S. Atty., both of Houston, Tex.

Rasbury, Adams & Harrell and Jed C. Adams, all of Dallas, Tex., for defendant Chaffe.

HUTCHESON, District Judge. The above-named defendants are charged with the devising of a scheme or artifice to defraud, and the subsequent use of the mails in consummation thereof, in violation of section 215 of the Penal Code (Comp. St. § 10385), and also with a conspiracy to commit an offense against the United States, in violation of section 37 of the Penal Code (Comp. St. § 10201). The indictment contains 16 counts, and charges the defendants, including J. A. Chaffe, with the offenses above set out, growing out of the activities of the defendants as officers and agents of the Old Dominion Oil Company, a Texas corporation, of which Oscar L. Pardue was president and J. A. Chaffe was secretary and treasurer.

The defendant J. A. Chaffe asserts in bar of the indictment a special plea setting up his immunity from prosecution arising out of the following facts:

On the 19th day of June, 1922, the Federal Trade Commission of the United States was holding a session in the city of Houston, Tex., at which they were investigating the affairs of the Old Dominion Oil Company. On said date the defendant J. A. Chaffe appeared in response to a subpœna in a cause styled "Federal Trade Commission v. Old Dominion Oil Company et al., Docket No. 861," duly and legally issued by said Commission. At said hearing Chaffe was introduced as a witness by the government, and his testimony appears in about 61 pages of the official report of the hearing, being pages 144 to 204, inclusive, beginning as follows:

"Examiner McCorkle: Are you ready to proceed, gentlemen?

"Mr. Brinson: Yes, sir; Mr. Examiner. I would like to have Mr. Chaffe sworn.

"J. A. Chaffe was thereupon called as a witness, and, having been duly sworn, testified as follows."

The matters about which Mr. Chaffe testified in the hearing before the Federal Trade Commission were later made the basis for the indictments in this cause.

The provisions of the Immunity Act invoked by Chaffe are section 7936, Barnes' Federal Code 1919 (Comp. St. § 8836i), United States Statutes:

"No person shall be excused from attending and testifying or from producing documentary evidence before the commission or in obedience to the subpœna of the commission on the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him may tend to criminate him or subject him to a penalty or forfeiture. But no natural person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may testify, or produce evidence, documentary or otherwise, before the commission in

obedience to a subpœna issued by it: Provided, that no natural person so testifying shall be exempt from prosecution and punishment for perjury committed in so testifying. Act Sept. 26, 1914, c. 311, § 9, 38 Stat. 722."

And section 7937 (Comp. St. § 8836j), reading in part as follows:

"Any person who shall neglect or refuse to attend and testify, or to answer any lawful inquiry, or to produce documentary evidence, if in his power to do so, in obedience to the subpœna or lawful requirement of the Commission, shall be guilty of an offense and upon conviction thereof by a court of competent jurisdiction shall be punished by a fine of not less than $1,000 nor more than $5,000, or by imprisonment for not more than one year, or by both such fine and imprisonment."

The defendant Chaffe contends that since, in the very language of the statute, he appeared and testified before the commission in obedience to a subpœna issued by it, he is exempt from prosecution, and not subject to any penalty on account of the matters so testified about.

The government, by demurrer, questions the sufficiency of the plea on account of its failure to allege that the testimony given by Chaffe before the Trade Commission was given under compulsion, and in exchange for a promise of immunity after he had claimed his constitutional privilege, and it had, under the terms of the statute, been denied to him. They say in their brief:

"Congress must have intended to grant immunity only to those persons who could have and would have asserted their privilege under the Constitution, and who asserted their privilege before testifying in any investigation conducted before the Federal Trade Commission."

And they assert that, not only is their position supported by the reasons which underlie such grants of amnesty, but by the authority of the District Court for the Southern District of New York in United States v. Skinner, 218 Fed. 870, United States v. Elton, 222 Fed. 428, and United States v. Heike, 175 Fed. 852, and of the District Court for the Northern District of Texas, in United States v. Lee, 290 Fed. 517.

The defendants, on the other hand, assert that the construction insisted upon by the government is harsh, unreasonable, directly in the face of the plain terms of the statute, and in derogation of a constitutional right. They assert that, the testimony having been given under compulsory process, immunity at once springs to the witness, unless he himself voluntarily waives it. They declare that the opinions cited by counsel are opinions of District Judges only, and that opposed to them are the opinions of Judge Humphreys, in United States v. Armour (D. C.) 142 Fed. 809, Judge Carpenter, in United States v. Swift (D. C.) 186 Fed. 1002, an excellently reasoned case of the Supreme Court of New York, in People of New York v. Sharp, 107 N. Y. 428, 14 N. E. 319, 1 Am. St. Rep. 851, and of Wisconsin, in State v. Murphy, 128 Wis. 201, 107 N. W. 470.

Examining the matter first from the standpoint of authority, I think it entirely clear that the weight of authority on the precise point is in favor of the defendant Chaffe's contention; that the real question under immunity statutes is whether the defendant testified voluntarily or under compulsion, and not whether at the time of testifying

he claimed and was denied his immunity, for in addition to the cases cited by the defendant, all of which hold as he contends, it appears that of all the cases cited by the government in support of its position only one, that of United States v. Skinner, supports its views.

In the Elton Case (D. C.) 222 Fed. 428, while Judge Hunt does on page 436 declare that he concurs in the opinion of Judge Grubb in the Skinner Case, he in fact sustains the defendant's plea for immunity, although Elton had not claimed immunity, had not refused to testify, had not in any manner at the hearing asserted the involuntariness of his testimony, or put the government at that time to the option discussed in the Skinner Case. That the Elton Case holds, as the defendant Chaffe contends here, is stated by Judge Hunt in the closing portion of the opinion (page 436):

"There is, therefore, but this question left: Were the facts and circumstances set forth in the plea in bar as surrounding and connected with the giving of the testimony such that the defendant can now claim that he testified unwillingly and compulsorily, and is therefore fairly entitled to immunity,"

—it appearing, as set out in the same case (page 431), that Elton testified in obedience to a subpœna, after having been duly sworn as a witness, and without any exaction by the commission, or any giving to him of any express waiver of immunity to sign, or taking any express declaration of the voluntariness of his testimony.

Neither is the Lee Case any authority for the government's position, for there the facts were entirely different from those here. No subpœnas were issued; no testimony was taken. Questions were asked the witness by some representative of the commission, and those questions were answered. The procedure outlined by the statute as a basis for immunity was not in any manner followed. The court, with eminent correctness, upon these facts held that the defendants were not in a position to invoke the statute for immunity, since they had not been proceeded against under the statute, so as to make immunity arise.

The other case relied upon by the government, of United States v. Heike (C. C.) 175 Fed. 852, really went off upon the finding of fact by the court that the testimony was voluntary, the court on page 859 stating as to the basis for the construction of this immunity statute:

"The circumstances may be such that the court should hold that the witness is entitled to immunity, even though not asserted or claimed. No circumstances of that sort * * * are shown here. The very contrary appears."

Again the judge says:

"Whether the immunity statute flows out to a witness testifying depends on circumstances. This statute of immunity must be administered with common sense."

Judge Grubb, in the Skinner Case, stands alone in the position which he there takes. While his opinion presents a splendid argument against the wisdom of the immunity statutes as they now are, and a good suggestion to the legislative authorities for an amendment

of them, it presents, in my opinion, no judicial ground for refusing to apply the statute as written. It by judicial interpretation writes into a statute in derogation of a constitutional right a limitation not therein contained, and which the ordinary mind, to which the statute is addressed, could not have supposed was contained in it. It to an extent follows the Draconian principle of writing the law in characters so fine that no one can read it, and thereby putting the government in a better position to take the unwary ones into its net. It magnifies the fault of the defendant, while it minimizes the bad faith of the government. It puts the seal of condemnation upon the offense against the general laws of which the defendant is charged, but it approves double dealing and evasion on the part of the government in the matter of a man's constitutional protection, which right reason and sound discrimination cannot, in my opinion, sustain.

Passing from the authorities upon which, as I have said, the defendant has far the best of it, to the reasons which should control, the defendant's position is even better, for I cannot read the judicial history of this country with reference to the constitutional provision against self-incrimination without being shocked by the unconscionableness of the claim, asserted here, that the government can under a statute which in plain terms and without qualification grants general amnesty to persons who appear and testify in obedience to a subpœna, compel them to testify, and thereafter break faith with them by denying the protection of the statute to those who testify in exact accordance with its terms.

So jealous has the Supreme Court of the United States been of every invasion of or aggression upon this provision of our Bill of Rights, so abhorrent to the sense of right of the American citizen is it that persons be compelled to incriminate themselves, that in Counselman v. Hitchcock, 142 U. S. 547, 12 Sup. Ct. 195, 35 L. Ed. 1110, it declared the effort of Congress to give a qualified immunity unconstitutional, and later, in Brown v. Walker, 161 U. S. 591, 16 Sup. Ct. 644, 40 L. Ed. 819, construed the statute passed to meet the defect suggested in the Counselman Case. There a divided court, in an opinion rich in historical and judicial reference, and glowing with a sense of the virtue of the Fifth Amendment, and its far-reaching protection, extended that amendment to cover, not only criminal cases, but every case or investigation by the government looking toward a criminal prosecution.

So vigorous was the sense of the gravity of the step taken by the Supreme Court in affirming the right of Congress to take away this constitutional immunity from self-incrimination, even in return for full immunity from prosecution, that four of the members of the Supreme Court dissented, holding that under no conditions could Congress take that immunity away. Nor is this all. With that same vigorous insistence upon the protection of individual right against governmental aggression which is the basis of our theory of government; with that same insistence upon the protection of each citizen against the overweening power of government, the constant recognition of which is essential to the maintenance of a free country—the

Supreme Court, beginning in the Boyd Case, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, and coming down to the Amos Case, in 255 U. S. 314, 41 Sup. Ct. 266, 65 L. Ed. 654, has affirmed and reaffirmed that by no quibble or artifice can the Fifth Amendment be evaded or avoided; the court in the Amos Case holding that the search of a person's premises for liquor by an officer having no warrant could not be said to have been with his permission, even though he failed to resist or oppose it.

This court is entirely sensible of the necessity for apprehending criminals, of the advantage of having criminals suffer for their offenses; but it is equally sensible that there is a higher obligation on government than that of catching one more or less offending criminal—the obligation of keeping faith with the individual. Whenever the time comes when the courts, in their eagerness to apprehend criminals, deny to the accused that which the laws and the Constitution give him; when men are convicted of offenses against their government, and in the process of that conviction every right which the genius of their country gives them is extended—they can but submit. When, however, they are convicted through a denial of a substantial right extended to them by their government, they can but despair; and when courts permit a construction of the law which makes the government break faith with individuals, whether offenders or not, then the reason for courts has ceased, and justice is no more.

Coming to the facts of this case, it plainly appears that the whole purpose of this investigation at which Chaffe testified as a government witness was to develop unfair practices of such a nature and under such circumstances as might reasonably disclose that criminal acts had occurred; that the government, having subpœnaed Chaffe, put him on the stand, and that he testified fully of matters, a large part of which are made the subject of the indictment in this case; that, whether he actually claimed immunity or not, the facts are that he was entitled to it, and could have had it, had he claimed it; that he did not volunteer as a witness; that, with every indicia of compulsion present, he came under process, and was by the government called to the stand and examined. It appears, then, that here is the simple case presented: That following the very words of the statute, and proceeding in accordance with its exact requirement, this defendant under a subpœna having testified, and now claiming his immunity springing thereout, no greater and no different from what the statute says would follow his act, is met by the government with the proposition that he did not *claim anything* at the time he testified, and therefore he cannot now have it. The government, in short, wants to write a statute after the fact, saying: Congress did not mean what it said when it in plain language told you that, if you testified in obedience to a subpœna, you could not be prosecuted. What Congress meant to say is that, if you testify in obedience to a subpœna, and after you have told the commission that you do not want to testify, and after *you have claimed protection against self-incrimination,* you can then claim immunity from prosecution. With this contention I cannot agree.

In what has been said it is not meant to hold that the mere fact of a subpœna confers an exemption. The controlling question is: Did he testify voluntarily, or upon compulsion; and it is in my opinion immaterial in law whether the witness testified under a subpœna or was called without a subpœna and put upon the stand upon compulsion by the government. *Upon the controlling issue of fact in cases of this kind, however, whether a witness testified voluntarily or upon compulsion,* if a witness appears under a subpœna and is placed upon the stand by the government, *the fact of compulsion is prima facie established,* and the *burden shifts to the government to show that, notwithstanding all of the indicia of compulsory testimony, the witness in fact waived his privilege, and testified voluntarily.*

In some cases, no doubt, an issue of fact will be presented as to the voluntary character of the testimony, but upon the facts of this record no issue arises as to whether this man was a volunteer because he appeared in obedience to a subpœna. He was called by the government, and by it placed upon the stand. Such a state of facts constitutes compulsion, and in the absence of evidence to rebut it establishes the involuntariness of defendant's action, and of rebuttal evidence this record is empty.

The demurrer to the plea will be overruled.