**UNITED STATES of America**
**v.**
**Peter W. WEBER and Ray S. Fisher,**
**Defendants.**
**Cr. No. 146–62.**

United States District Court
D. New Jersey.
Feb. 11, 1965.

David M. Satz, Jr., U. S. Atty., by Richard A. Levin, Asst. U. S. Atty., for United States of America.

Lorentz & Stamler, by Joseph H. Stamler, Newark, N. J., for defendant, Ray S. Fisher.

## OPINION

COOLAHAN, District Judge:

This motion before the Court presents a question of whether or not a person who has testified pursuant to a subpoena issued by the Department of Justice through the instrumentality of the United States Attorney for the District of New Jersey before the Grand Jury may under certain circumstances acquire immunity from prosecution under provisions of 29 U.S.C.A. § 521 and 15 U.S. C.A. § 49.

This motion is made on behalf of the defendant, Ray S. Fisher. After testimony was taken and briefs submitted, the Court took the matter under advisement to study the record and exhibits.

It appears that the defendant Fisher is and was the president and a stockholder of Public Constructors, Inc., (hereafter referred to as Public) a corporation engaged in road and highway construction. The co-defendant named in the indictment, Peter W. Weber, is and was at all times herein business manager of Local 825 of International Union of Operating Engineers, members of which from time to time were employed by Public. Prior to the finding of the indictment in dis-

pute, Weber had been a stockholder of Public and a partner in Jersey Equipment Co. Jersey Equipment Co. was and is a partnership engaged in the business of renting construction equipment to Public.

On January 27th, 28th, 29th, 30th and 31st, 1958 Fisher and Weber appeared before the Select Committee for the 85th Congress, Second Session, who were investigating improper activities in the Labor Management field. Fisher testified [1] concerning Weber's affiliation with the corporation of which Fisher was the president and as to their holdings in the partnership, Jersey Equipment Co. Weber gave testimony concerning his participation in the above named corporation and partnership and other matters.[2]

As a result of these hearings, the Labor Management Reporting and Disclosure Act of September 14, 1959, Public Laws 86–257, 73 Stat. 519, (Landrum-Griffin Act) was adopted by Congress. On December 29, 1960 Public filed its first "Employers Report" with the United States Department of Labor, pursuant to the Act.

According to the testimony, during the first three months of 1961 investigators of the Bureau of Labor Management Reports visited the office of Public (Tr. P. 56) and conferred with employees of that corporation, examined its books and records, and stated that the purpose of the investigation was to uncover the affairs of Peter Weber (Tr. P. 55) and not Public or any officer of that company. Again, in November of 1961 the Bureau investigators returned to Public and met with Fisher and Mr. Boyd of that concern. When asked what the purpose of the investigation was they replied that their concern was with Peter Weber rather than Fisher (Tr. P. 67). The purpose of this visit was to explore some statements that Fisher had made at previous meetings and Fisher was asked if

1. Transcript of proceeding before Select Committee on Improper Activities in the Labor Management field. Page 8229 Part 20.

2. Transcript Page 8117, Part 20.

he would be willing to sign a written statement which the investigator of the Bureau would prepare. Fisher stated that he would not sign such statement until he had had his counsel review it. When the investigator was asked the purpose of the statement he replied, "Well, it might save you a trip to the Grand Jury." (Tr. P. 68).

Thereafter all of the reports and results of the investigation by the Labor Department investigators were sent to the Area Director of the Department of Labor, Richard Lally.

On or about November 20th or 21st the Area Director and one of the investigators appeared at the United States Attorney's Office for the purpose of a conference with that official. (Tr. PP. 123-4). The tenor of the conversation concerned the verification of the reports concerning payments made to Weber (Tr. P. 124) and the investigation in general.

Some days prior to December 20, 1961 Fisher, pursuant to a telephone call made by the United States Attorney, was directed to bring certain corporation records before the Grand Jury (Tr. P. 78); and on December 20, 1961 in response to a subpoena previously served on him, Fisher appeared before the Grand Jury and gave testimony concerning the relationship of Weber and one Anna M. Rocha with the aforementioned corporation and partnership. During the course of the preliminary remarks before the Grand Jury, Fisher was advised of his right to avail himself of the privilege of the Fifth Amendment. He was further advised that in the event he sought to invoke the provisions of the Fifth Amendment the matter would be presented before a Federal District Judge who would then decide whether Fisher had proper grounds for asserting the privilege. In addition to the above, Fisher was asked to sign a waiver of immunity which he refused to do.

Inquiry was made of Fisher before the Grand Jury concerning Weber's affiliation with the corporation and partnership, personal use of vehicles owned by Public and on other matters concerning receipt of things of value from Public and Jersey Equipment Co. It is interesting to note that Weber was never called or subpoenaed to appear before the Grand Jury. The only other witnesses to appear, according to the record before the Court, were Fisher and the investigators of the Labor Department who had conducted the preliminary investigation. On April 4, 1962 the indictment, the subject matter of this action, was filed with the Clerk of the Court naming both Fisher and Weber as defendants.

Count one of the indictment charges defendants, Fisher and Weber, with conspiracy against the United States to violate Section 186(b) of Title 29, United States Code, by permitting and assisting Weber to agree to receive and accept money and things of value from Public Constructors, Inc., and Jersey Equipment Co., in violation of 18 U.S.C.A. § 371.

The other substantive counts charge Fisher with violations of 29 U.S.C. § 186 (a), (d), in that he did allegedly pay, deliver and agree to pay and deliver to a labor representative, to wit, Weber, things of value of Public Constructors, Inc., and Jersey Equipment Co., during certain periods of time. The charges set forth in the indictment are related to and directly flow from the transactions and matters concerning which Fisher testified to before the Grand Jury and the Legislative Committee.

Section 601 of the Act 29 U.S.C.A. § 521 gives the Secretary of Labor power to conduct investigations to determine violations of the L. M. R. D. A., with certain exception as to title I. This section gives the Secretary of Labor the power to grant immunity to persons appearing and giving evidence in response to a subpoena issued under the auspices of his department. The immunity statute utilized for the purpose is 15 U.S.C.A. §§ 49, 50, a provision of the Federal Trade Commission Act but herein made expressly applicable to Labor matters by the Congress.

Section 607 of the Act read in conjunction with Section 601 authorizes the

Secretary to delegate certain of his powers to other Governmental Departments in order to avoid unnecessary expense and duplication of function among Governmental Agencies. To effectuate this intent, a Memorandum of Understanding between the Departments of Labor and Justice, dated February 16, 1960 has been executed, and provides in detail the division of the investigatory function to be allotted to each of the two departments. The types of criminal prosecutions are categorized and separated with certain crimes being reserved to the sole responsibility of the Secretary of Labor and other violations to be investigated by the Department of Justice through this delegation from the Secretary. Among these latter delegated crimes appear the substantive offenses with which Fisher is charged in the indictment forming the subject matter of this motion. See 25 Federal Register 39 (1960) (P. 1708).

This memorandum expressly provided that the Department of Justice was to proceed with such investigation by the authority of powers delegated from the Secretary of Labor which that official possessed under the enabling Act.

The powers of investigation so delegated by the Secretary of Labor to the Department of Justice could obviously not transcend the powers originally granted to the Secretary by Congress. The intent of the Legislature as gleaned from the Legislative history manifests their desire to grant the Secretary broad investigatory power along with substantial authority to delegate same to other Governmental Agencies in order to implement the Labor-Management protection policies enunciated in the purposes of the Act.

The Courts have passed upon the broad delegation of authority allotted under the Act and utilized in the Memorandum of Understanding and have upheld the validity of the underlying enabling legislation and the specific transfer of authority made pursuant thereto. Goldberg v. Battles, 196 F.Supp. 749, 755 (D.C.Pa.1961), aff'd, 299 F.2d 937 (3rd Cir. 1961), cert. denied, 371 U.S. 817, 83 S.Ct. 32, 9 L.Ed. 2d 58 (1962). The *Battles* case expressly held:

"In summary the Court finds that the Secretary of Labor is authorized by § 601 of the Act to delegate his investigatory and subpoena functions; that he in fact did so delegate them to the Commissioner; that § 607 of the Act, read in conjunction with § 601, authorized the Commissioner to delegate his functions to the Department of Justice; and, that the Commissioner did in fact authorize the Department of Justice to conduct this investigation."

As stated previously the L. M. R. D. A. utilizes the immunity section of the Federal Trade Commission Act found in 15 U.S.C.A. § 49. That statute states:

" * * * But no natural person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may testify, or produce evidence, documentary or otherwise, before the commission in obedience to a subpoena issued by it: Provided, That no natural person so testifying shall be exempt from prosecution and punishment for perjury committed in so testifying. Sept. 26, 1914, c. 311, § 9, 38 Stat. 722."

Through the years Congress has enacted some forty different immunity statutes. Among such statutes immunity may be imposed upon a defendant in several different ways. See 72 Yale Law Journal 1565 et seq. Certain statutes require that the Fifth Amendment be claimed before the witness will be immunized, while others grant immunity automatically upon the appearance and testimony of a witness before a designated body pursuant to an authorized subpoena. Among this latter type of mandatory or automatic immunity provision falls Section 49 relied on by the defendant Fisher. This statute was enacted in 1914 and has been interpreted through Judicial decision to immediately vest in the witness when he appears and testifies under subpoena. See United States v. Monia, 317

U.S. 424, 63 S.Ct. 409, 87 L.Ed. 376 (1943); United States v. Pardue, 294 F. 543 (S.D.Tex.1923) and 72 Yale Law Journal 1565, 1602 (1963 Edition).

In *Goldberg v. Battles,* supra, the delegation of powers was expressly made to an attorney of the Department of Justice in order to question a witness under investigation for a violation of L. M. R. D. A. As stated before the validity of the delegation to the Secretary and to the Department of Justice were upheld and the witnesses' claim of a deficient grant of immunity because of such delegation overruled. Consequently, it becomes clear that the Act in question is a valid Congressional enactment which would serve to immunize a person testifying in response to a subpoena issued directly by the Secretary of Labor or indirectly by some sub-officer to whom express delegation has been made.

It is the position of the movant that such a delegation was herein made pursuant to the Memorandum of Understanding previously discussed, and that the subpoena issued by the United States Attorney was in reality issued as an extension of the powers granted to the Secretary of Labor whose offices govern all investigations and proceedings under the L. M. R. D. A. (with the exception of Title I.)

The United States Attorney responds with the contention that Fisher was subpoenaed pursuant to an alleged investigation of certain anti-fraud charges. However, Fisher was not questioned on any matters concerning anti-fraud charges, but his interrogation before the United States Attorney and the Grand Jury was particularly focused upon Weber's affiliation with Public and Jersey Equipment Co., exactly the same matters which were investigated by the Labor Department. Significantly, the Department of Justice utilized the services of B. L. M. R. investigators rather than their own agents or operatives. Furthermore, the reports and discussions with Fisher were all made available to the United States Attorney prior to the issuance of the subpoena and the appearance of Fisher and the Labor investigators (who were also witnesses) before the Grand Jury. In any case, the indictment in question clearly charges Fisher with violations of the L. M. R. D. A. and does not touch upon any fraud or other matters particularly within the province of the Justice Department.

The argument that the investigations concerned other crimes rather than the offenses carrying immunity privileges was made in the case of United States v. Niarchos, 125 F.Supp. 214 (D.D.C. 1954) and United States v. Onassis, 125 F.Supp. 190 (D.D.C.1954). Those cases held that the immunity granted must be coextensive with the violations and crimes about which the witness will be questioned. In *Niarchos* the defendant had already been indicted in a previous case and the Government claimed the inquiry before the Grand Jury was for an entirely different offense. However, the subject matter of the questioning and the indictment was found to emanate from the Shipping Act and hence the defendant's immunity was broad enough to cover all facets of prosecution under this section including the prior charge. See also United States v. Andolschek, 142 F.2d 503, 506 (2nd Cir. 1949).

In the case of In re Certain Grand Jury Witnesses, 211 F.Supp. 365 (E.D. Mich.1962) the Court held that witnesses immunized by the Secretary of Labor were likewise immunized in proceedings before a Grand Jury. In that case the witnesses first refused to testify before a Grand Jury in response to a subpoena issued by the United States Attorney and were subsequently subpoenaed by the Secretary of Labor and granted immunity, pursuant to 15 U.S.C.A. § 49. The witnesses were then returned to the Grand Jury proceedings and again claimed the Fifth Amendment. However, the Court held that the prior immunization was sufficient to preclude the witnesses from claiming the Fifth Amendment in the later proceedings inasmuch as the F. T. C. Immunity Act is co-extensive with the Constitutional guarantees of

self incrimination and extends to witnesses' testimony before the Grand Jury.

Both parties to this action claim the benefit of the decision in the above case. It is the Government's contention that the necessity of intervention by the Secretary is the necessary prerequisite to the proper granting of immunity in such cases. It is difficult to reconcile this formalistic approach with the liberal provisions of delegation of authority and automatic grant of immunity present in the statutes relevant to this matter. The mere interposition of the Secretary's subpoena does not change any of the actual elements when applied to the case at Bar. The information sought to be elicited from Fisher by the United States Attorney before the Grand Jury was to inure to the benefit of the Secretary pursuant to the performance of the function delegated under the Memorandum of Understanding. The investigators who uncovered the background material upon which Fisher was questioned were Bureau operatives directly under the supervision of the Secretary. The investigation being conducted was a Labor matter primarily against Weber and Rocha. The indictment founded charged Labor Law criminal violations. Much of the testimony had already been had before a Congressional Committee prior to the immunity enactment and hence was a matter of record not requiring Fisher's present testimony for its revelation. It cannot be argued that if the Secretary had directly subpoenaed Fisher he would be immunized. Instead of doing this the Secretary had agents interview Fisher and investigate the corporation's books. To allow a circumvention of the designated procedure by subpoenaing an unwary witness before the Grand Jury on the chance he may not claim his privilege and that immunity will not attach, would thwart the Congressional policy promulgated in the enactment and would seriously cast doubt upon traditional notions of judicial fair play.

The Court does not mean to say that the United States Attorney had no right to subpoena Fisher or to conduct an investigation outside of the search for L. M. R. D. A. violations. If the subject matter of Fisher's testimony was antifraud then immunity would not necessarily attach unless it was a direct outgrowth of the testimony. See Heike v. United States, 227 U.S. 131, 33 S.Ct. 226, 57 L.Ed. 450 (1913) and *Monia,* supra. However, in the case at Bar the evidence as testified to by the various witnesses seems to overwhelmingly indicate that Fisher was subjected to inquiry concerning the Labor matters for which he was subsequently indicted. See *Niarchos,* supra.

Whether the actions of the Secretary and the United States Attorney were intentionally collusive in obtaining this information is immaterial to a decision where the facts so strongly indicate that both agencies were working hand in hand upon this matter. The law prescribes the allowable delegation and it was made. The information obtained was prepared and utilized by both the parties involved. The implementation of the subpoena through processes otherwise available to the United States Attorney (but not to the Secretary) will not change the substance of the transaction and hence cannot alter the result.

The Courts have protected witnesses testifying pursuant to immunity statutes where the enactment in question was not broad enough to prevent the use of evidence against that witness in a later proceeding. Therefore, in Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892) the Court indicated that nothing short of absolute immunity would justify compelling the witness to testify if the privilege was claimed. In the later decision of United States v. Pardue, supra, the Court, in dealing with the Federal Trade Commission Act (in issue at Bar), held that it was unnecessary under this statute for the witness to claim the benefit of the immunity statute or the privilege against self-incrimination and that the burden shifted to the Government to show that, notwithstanding all of the indicia of compulsory

testimony, the witness in fact waived his privilege and testified voluntarily. Where he is called to testify by subpoena the voluntary nature of any such testimony almost disappears. (294 F. 599).

The zeal with which the Courts have protected the defendant in cases attempting to infringe his Fifth Amendment Constitutional rights and still prevent the granting of immunity are set out and discussed in the *Pardue* decision. See Brown v. Walker, 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819 (1896).

In the *Monia* case, supra, the United States Supreme Court construed the immunity provisions of the Sherman Act, 15 U.S.C.A. §§ 32, 33 which is substantially identical with 15 U.S.C.A. §§ 49, 50. In that case the appellees charged with conspiracy to fix prices in violation of the Anti-Trust Act testified before a Federal Grand Jury and gave testimony connected with indictments which were later found. Neither of the appellees made any claim of privilege under the Fifth Amendment before the Grand Jury. Subsequently they moved to dismiss the indictment and the District Court granted the motion. An appeal was had directly to the Supreme Court. Mr. Justice Roberts traced the historical evolution of the types of immunity statutes and concluded by affirming the lower Court. The opinion found the legislation involved in the case to be plain in its terms and on its face to mean to the layman that if he is subpoenaed and sworn and testifies he is to have immunity. The Court specifically pointed out that the Government urged interpretation of the Act would create a trap for the witness. It reasoned that Congress could have clearly spelled out the procedure to be invoked if it did not wish the immunity to automatically attach as it did in other legislative enactments in the 1934–40 period.

More recently the present United States Supreme Court has handed down two decisions indicating a continuation of this policy of liberal construction of immunity provisions in an effort to protect the Constitutional rights of the affected witnesses. See United States v. Welden, 377 U.S. 95, 84 S.Ct. 1082, 12 L.Ed.2d 152 (1964) and Murphy v. Waterfront Commission, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). In the latter case the Court held that the immunity granted must apply to both State and Federal prosecutions and afford protection as against both sovereigns if it is to be operative to divest the claimant of his Fifth Amendment rights. This is a definite continuation and enlargement of the policy of the decisions heretofore mentioned. See also Ullman v. United States, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956).

In *Welden*, (although dealing with a reverse factual situation), the decision of the Court is clear without doubt that the immunity provisions must apply to those testifying under subpoena in any Judicial proceeding which is brought under specific statutes such as the Commerce Act or the Sherman Act.

In Hale v. Henkel, 201 U.S. 43, 66, 26 S.Ct. 370, 375, 50 L.Ed. 652 (1906) we find the following language: "While there may be some doubt whether the examination of witnesses before a grand jury is a suit or prosecution, we have no doubt that it is a 'proceeding' within the meaning of this proviso. The word should receive as wide a construction as is necessary to protect the witness in his disclosures, whenever such disclosures are made in pursuance of a judicial inquiry, whether such inquiry be instituted by a grand jury, or upon the trial of an indictment found by them."

Concomitant with the above reasoning, where the Immunity Act specifies hearing before a Commission and the Commission may delegate authority thereunder to a sub-agent or associate department such as the United States Attorney, the proceedings continuing under their joint auspices must carry with it the granted immunity provision which is part and parcel of the same Legislative enactment.

In summary, this Court is of the opinion that the indictment found against

Ray S. Fisher must be dismissed on the grounds that immunity attached to his appearance and testimony before the Grand Jury pursuant to a subpoena issued nominally by the Department of Justice but actually in accord with the Memorandum of Understanding entered into between that Department and the Secretary of Labor. Furthermore, the oral testimony has convinced this Court that the matters under investigation at the time of Fisher's interrogation were violations of the L. M. R. D. A. and explicitly within the statutory framework. The facts of the matter indicate that this was in reality the conduct of a Labor investigation and nothing further so as to insulate the Government against the application of the appropriate Immunity Statute.

Let counsel for defendants submit an appropriate order.